E. V. FERRELL, JR., DOUGLAS DILLARD, AND ROSENA F. DILLARD v.
DEPARTMENT OF TRANSPORTATION

No. 452A91

(Filed 8 October 1993)

1. **State § 4 (NCI3d) — condemned land not needed for highway purposes — statutory rights of original owners — waiver of DOT's sovereign immunity**

In enacting the statutory scheme set forth in N.C.G.S. § 136-19 (1986) which empowers the DOT to acquire title to land that it deems necessary for the construction or maintenance of roads and provides that, when the DOT later determines that a parcel is not needed for highway purposes, first consideration shall be given to any offer to repurchase by the original owners and their assigns, the legislature implicitly waived the DOT's sovereign immunity to the extent of the rights afforded in N.C.G.S. § 136-19.

**Am Jur 2d, Eminent Domain § 171.**

2. **Declaratory Judgment Actions § 7 (NCI4th) — condemned land not needed for highway purposes — price of reconveyance to original owner — justiciable controversy**

A justiciable controversy existed so as to permit plaintiffs' declaratory judgment action for a determination pursuant to N.C.G.S. § 136-19 (1986) of the price at which the DOT must reconvey to them land which the DOT previously took by eminent domain but no longer needs for highway purposes because litigation over the price appears unavoidable where the DOT offered the property to plaintiffs on 6 January 1989; plaintiffs made a counteroffer on 12 September 1989 which was rejected by the DOT when it raised its asking price in October 1989; the DOT stated that its offer would terminate on 8 November 1989; extensive efforts taken to appraise the property and to negotiate with plaintiffs demonstrate that the DOT has been consistently moving toward an eventual sale of the property; and there is no indication that the parties will agree on a price for the property. Although DOT regulations prohibit the sale of unneeded land to the original owner unless the sale is first approved by the DOT, the Council of State, and the Governor, none of these parties has approved a sale to plaintiffs, and the property has not been declared

**FERRELL v. DEPT. OF TRANSPORTATION**

[334 N.C. 650 (1993)]

unnecessary by the DOT, these contingencies and possibilities do not make the case nonjusticiable.

**Am Jur 2d, Declaratory Judgments §§ 25-41.**

**3. Eminent Domain § 6 (NCI4th) — condemned land not needed by DOT — price of reconveyance to original owner**

When land previously condemned by the DOT was no longer needed for highway purposes, N.C.G.S. § 136-19 (1986) required the DOT to permit the original owner or his assigns to repurchase the land for the initial award plus interest and the cost of any improvements rather than for the fair market value, since the legislature did not intend for the state to profit from the appreciation of condemned land due to the very public improvements accomplished by the condemnation but intended to return the parties to the positions they would have been in if the DOT had not originally taken more land than was necessary.

**Am Jur 2d, Eminent Domain § 142.**

Justices WEBB and MITCHELL dissent.

Justice PARKER did not participate in the consideration or decision of this case.

Appeal by defendant pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 104 N.C. App. 42, 407 S.E.2d 601 (1991), affirming judgment for plaintiffs entered by Freeman, J., on 9 August 1990, in the Superior Court, Forsyth County. We allowed defendant's petition for further review as to additional issues which the Court of Appeals decided unanimously. Heard in the Supreme Court 12 May 1992.

*Petree, Stockton & Robinson, by F. Joseph Treacy, Jr., for plaintiff-appellees.*

*Attorney General Lacy H. Thornburg, by Assistant Attorneys General Archie W. Anders and Elaine A. Dawkins, for defendant-appellant.*

EXUM, Chief Justice.

This is an action for declaratory and injunctive relief against the Department of Transportation (DOT). Plaintiffs petitioned the

trial court to determine pursuant to N.C.G.S. § 136-19 the price at which the DOT must reconvey to them land which the DOT previously took by eminent domain but no longer needs. At the time of this suit, N.C.G.S. § 136-19 provided:

> If any parcel is acquired in fee simple as authorized by this section and the Department of Transportation later determines that the parcel is not needed for highway purposes, first consideration shall be given to any offer to repurchase made by the owner from whom said parcel was acquired or the heirs or assigns of such owner.

N.C.G.S. § 136-19 (1986) (amended 1992).

The questions presented on appeal are whether the DOT is shielded from suit due to sovereign immunity, whether a justiciable controversy exists, and the price at which the DOT must reconvey the land. A unanimous Court of Appeals panel held that the DOT is subject to suit and that the controversy is justiciable; a majority of the panel held that the DOT must reconvey the land for the initial condemnation award plus interest. We allowed review as to all issues, and we now affirm the Court of Appeals.

I.

On 17 April 1972, the DOT acquired 34.93 acres of land through eminent domain proceedings (1972 taking). The land taken was part of an 86.08 acre tract owned by E.V. Ferrell, Jr. and J.C. Smith as tenants in common. Ferrell owned an eighty percent undivided interest in the property, and Smith owned twenty percent. Ferrell and Smith had spouses with marital interests in the property. In 1975 the parties filed a Consent Judgment in which the DOT paid Ferrell and Smith $305,500 for this taking. This land was to be used for the construction of Corporation Freeway. Due to changes in the plans, however, only a portion of the freeway was constructed, which became part of the Interstate 40 Bypass. These modifications required that the DOT acquire an additional 5.84 acres from the remaining Ferrell-Smith tract, which it did on 22 December 1986 (1986 taking). The DOT used all of the property from the 1986 taking and 5.823 acres from the 1972 taking for the construction of a ramp that is part of the Interstate 40 Bypass and Hanes Mall Boulevard.

Pursuant to a property settlement, Mr. Ferrell obtained any interest Mrs. Ferrell had in the property. The Smiths conveyed

their interest in the land, and any rights they had under N.C.G.S. § 136-19, to the Dillards. Mr. Ferrell and the Dillards are therefore the current owners of any right to repurchase derivative of the takings.

The plaintiffs wanted to repurchase the unused portion of the 1972 taking, which amounted to 29.107 acres, and made numerous inquiries of the DOT. Although the DOT's general policy is to retain condemned property until a project is completed, the DOT determined that the property was no longer needed for highway purposes and decided that it. was amenable to selling the land. Due to the development caused by the highway, the value of the land surrounding the highway had risen sharply. W.R. Weir, Jr., hired by the DOT to conduct an appraisal of the land, valued the land at $1,819,175 in November 1988. Max Loflin, a staff appraiser for the DOT, valued the property at $2,294,500 in November 1988. On 6 January 1989 the DOT offered to sell the property to the plaintiffs for $1,819,175. Plaintiffs hired an appraiser who valued the property at $1,018,750 in August 1989. On 12 September 1989 plaintiffs met with the DOT and offered $845,000, which represented the original award of $305,000 plus interest.

The DOT agreed to re-evaluate its offer amount, and on 17 October 1989 the DOT increased the price for the land to $2,294,500. The DOT stated that this offer was to terminate on 8 November 1989. In arriving at this figure, James E. Rhodes, manager of the Right of Way Branch, reviewed the DOT's files on the property, including the 1972 and 1986 condemnation files, the acreage used to construct Hanes Mall Boulevard, the DOT's two appraisals, an inspection of the property, correspondence with Mr. Ferrell, and discussions with his staff.

Plaintiffs then filed suit under the Declaratory Judgment Act requesting the trial court to determine the price for which the 29.107 acres must be sold back to the plaintiffs under N.C.G.S. § 136-19. The plaintiffs also sought an injunction to prevent the DOT from conveying the land to any other parties. The trial court found for the plaintiffs, declaring that the DOT must reconvey the property for $821,938.25, which represents the amount of the condemnation award plus interest; the trial court also granted the injunction against the DOT. A majority of the Court of Appeals affirmed, concluding that N.C.G.S. § 136-19 requires the DOT to reconvey to plaintiffs their former property for the initial award

plus interest. Defendants appealed this conclusion as of right based on the dissent in the Court of Appeals; we granted further review of the additional issues of sovereign immunity and justiciability.

II.

[1] The DOT argues that since it is an agency of the state, it is immune from suit under the doctrine of sovereign immunity. It is well established that a state and its agencies may not be sued unless sovereign immunity is waived. *Guthrie v. State Ports Authority*, 307 N.C. 522, 534, 299 S.E.2d 618, 625 (1983). This State has expressly waived sovereign immunity for various types of civil actions. *See, e.g.*, N.C.G.S. § 143-135.3(d) (1990) (permitting suit for certain contract claims after procedural remedies are exhausted). Also, the state may implicitly waive its immunity through conduct. *See Smith v. State*, 289 N.C. 303, 320, 222 S.E.2d 412, 423-24 (1976) (state implicitly consents to suit when it enters a valid contract); *Bell Arthur Water Corp. v. N.C. Dept. of Transportation*, 101 N.C. App. 305, 310, 399 S.E.2d 353, 356, *disc. rev. denied*, 328 N.C. 569, 403 S.E.2d 507 (1991) (state implicitly waived immunity by law requiring DOT to compensate injured party).

In *Smith* we held that various policy considerations compel the conclusion that when the state enters into a contract through its authorized officers and agencies, it implicitly consents to suit for damages if it breaches that contract.[1] *Smith*, 289 N.C. at 320, 222 S.E.2d at 423-24. The Court was persuaded that denying the injured contracting party a remedy would "take his property without compensation and thus . . . deny him due process." *Id.* at 320, 222 S.E.2d at 423. The Court was also moved by the consideration that permitting the state to "arbitrarily avoid its obligation under a contract . . . would be judicial sanction of the highest type of governmental tyranny." *Id.* Further, the Court refused "[t]o attribute to the General Assembly the intent to retain to the state the right, should expedience seem to make it desirable, to breach its obligation at the expense of its citizens," because that would "impute[ ] to that body 'bad faith and shoddiness' foreign to a democratic government." *Id. Smith* also recognized that a "citizen's

---

1. This principle is followed in several states. *See, e.g., V.S. DiCarlo Constr. Co. v. Missouri*, 485 S.W.2d 52, 54 (Miss. 1972); *Kinsey Constr. Co. v. South Carolina Dep't of Mental Health*, 272 S.C. 168, 171, 249 S.E.2d 900, 902-03 (1978), *overruled on other grounds, McCall v. Batson*, 285 S.C. 243, 329 S.E.2d 741 (1985); *Architectural Woods, Inc. v. Washington*, 92 Wash.2d 521, 526, 598 P.2d 1372, 1375 (1979).

petition to the legislature for relief from the state's breach of contract is an unsatisfactory and frequently a totally inadequate remedy for an injured party." *Id.*

It has also been held that the North Carolina General Assembly implicitly waived sovereign immunity when it obligated the DOT to pay for the cost of relocating water and sewer lines owned by certain entities. *Bell Arthur Corp. v. North Carolina Dep't of Transp.*, 101 N.C. App. 305, 310, 399 S.E.2d 353, 356. In *Bell Arthur*, the court reasoned that the statute entitling the injured party to compensation logically implies a waiver of sovereign immunity as to those costs. *Id.*

Other jurisdictions have also found that statutory schemes conferring rights to citizens imply a waiver of sovereign immunity. *See, e.g., King v. DeSermonis*, 481 S.W.2d 652, 655 (Ky. App. 1972) (statute requiring Department of Highways to reinstate employee with back pay implicitly waives sovereign immunity to that extent); *State Employees' Assoc. of New Hampshire, Inc. v. Belknap County*, 122 N.H. 614, 621-22, 448 A.2d 969, 972-73 (1982) (state retirement system contains implicit waiver of sovereign immunity).

We find in the case before us the same considerations that led the courts in *Smith* and *Bell Arthur* to find a waiver of sovereign immunity. N.C.G.S. § 136-19 empowers the DOT to acquire title to land that it deems necessary for the construction or maintenance of roads. That section also grants owners and their assigns the rights sought to be asserted in this litigation. In enacting this statutory scheme, the legislature has implicitly waived the DOT's sovereign immunity to the extent of the rights afforded in N.C.G.S. § 136-19 (1986).

## III.

[2] The DOT next argues that there is no justiciable controversy between the parties. Plaintiffs sought relief under the Declaratory Judgment Act, which provides:

> Any person . . . whose rights, status, or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status, or other legal relations thereunder.

N.C.G.S. § 1-254 (1983). As with all other actions, however, there must be a justiciable controversy before the Declaratory Judgment Act may be invoked. There is a justiciable controversy if litigation over the matter upon which declaratory relief is sought appears unavoidable. *Sharpe v. Park Newspapers of Lumberton*, 317 N.C. 579, 589, 347 S.E.2d 25, 32 (1986).

Here, we conclude that litigation over the price at which DOT must convey this property to plaintiffs is unavoidable. The DOT offered the property to the plaintiffs on 6 January 1989. On 12 September 1989 the parties met again and the plaintiffs made a counteroffer. This counteroffer was considered and rejected by the DOT when it raised its asking price in October 1989. Further, the DOT stated that its offer would terminate on 8 November 1989. The extensive efforts taken to appraise the property and to negotiate with the plaintiffs demonstrate that the DOT was consistently moving toward an eventual sale of the property. Further, there is no indication the parties will agree on a price for the property. The plaintiffs' last attempt at negotiation met with a second offer from the DOT that was higher than the DOT's initial offer. "[W]here the court is convinced that litigation, sooner or later, appears to be unavoidable," the plaintiffs' case is ripe. *Insurance Co. v. Bank*, 11 N.C. App. 444, 449, 181 S.E.2d 799, 802-03 (1971). Because litigation on this matter appears unavoidable, plaintiffs' claim is ripe.

The DOT argues that it is conceivable that litigation will not arise. The DOT refers to its regulations which prohibit the sale of unneeded land to the original owner unless the sale is first approved by the DOT, the Council of State, and the Governor. The DOT points out that none of these parties has approved a sale to the plaintiffs; it further notes that the property has not been declared unnecessary by the DOT. The DOT also raises the possibility that it may decide that the land in question is needed for highway construction. These contingencies and possibilities, however, do not make the case nonjusticiable. We do not require the plaintiff to show with absolute certainty that litigation will arise; the plaintiff must merely demonstrate to a "practical certainty" that litigation will ensue. *Sharpe v. Park Newspapers of Lumberton*, 317 N.C. 579, 590, 347 S.E.2d 25, 32.

We therefore affirm the determination of the Court of Appeals that there is a justiciable controversy which provides the necessary underpinning for plaintiffs' declaratory judgment action.

IV.

[3]   The substantive issue presented is whether N.C.G.S. § 136-19 requires the DOT to sell land previously condemned but no longer needed to the original owner when the original owner offers to repurchase the land for the initial award plus interest. The plaintiffs contend that the Court of Appeals was correct in determining that this statute requires the DOT to reconvey the land for the amount of the initial award plus interest. The defendant argues that it may reconvey the land for its fair market value. Based on the following analysis, we affirm the conclusion of the Court of Appeals that the DOT must reconvey the property for the initial award plus interest.

Since the statute does not specify at what price the DOT is to sell to the original owners, we must determine by statutory construction what the legislature intended. *In re Hardy*, 294 N.C. 90, 95, 240 S.E.2d 367, 371 (1978). The language of the statute is generally the strongest evidence of legislative intent. When the language is unclear, however, legislative intent must be discerned by looking to the legislature's purpose in enacting the statute and the consequences of various interpretations. *Electric Supply Co. v. Swain Electrical Co.*, 328 N.C. 651, 656, 403 S.E.2d 291, 294 (1991).

This precise issue arose before the Minnesota Supreme Court on a similar statute. *First Am. Nat'l Bank v. Minnesota*, 322 N.W.2d 344 (Minn. 1982). The relevant Minnesota statute governing the sale of condemned property no longer needed stated that "the lands shall first be offered for reconveyance to [a] previous owner or his surviving spouse."[2] Minn. Stat. § 161.44 (amended 1983). The Minnesota Supreme Court stated:

> While reconveyance is clearly provided for, the intended reconveyance price is unclear. In ascertaining legislative intent we may therefore consider, among other matters, the object to be obtained by the statute. We think an overriding objective of section 161.44 is to restore, to the extent possible, the *status quo ante*. . . . Put another way, we do not think the legislature intended the state to profit from sudden appreciations in land values occasioned by public improvements for which the land was taken but never used. To hold otherwise would put a

---

2. Although the Minnesota statute contained a provision stating that the landowner may not pay less for a portion of land than he initially received, that difference is immaterial to the issue before us.

premium on, and encourage a practice of, condemning more land than is reasonably necessary for public purposes.

*Id.* at 346.

Our analysis leads us to the same conclusion reached by the Minnesota Supreme Court: the legislature did not intend the state to profit from the appreciation of condemned land due to the very public improvements accomplished by the condemnation.[3]

The defendant correctly points out that subsequent to the Minnesota court's decision, the Minnesota legislature passed a statute setting the repurchase price equal to current market value. 1983 Minn. Laws c. 143, ss. 6, 8 (codified at Minn. Stat. § 161.43 (1986)). The North Carolina General Assembly, however, has acted quite differently in this area.

Our legislature specifically addressed the price for land condemned by the DOT but no longer needed when it amended N.C.G.S. § 136-19 in 1992 to read:

If the Department of Transportation acquires by purchase, donation, or condemnation part of a tract of land in fee simple for highway right-of-way as authorized by this section and the Department of Transportation later determines that the property acquired for highway right-of-way, or a part of that property, is no longer needed for highway right-of-way, then the

---

3. The method of computing the compensation to which a landowner is entitled also indicates that the state is not entitled to fair market value. It is well established that one whose land is condemned is not entitled to its value increased by the project for which it was condemned. N.C.G.S. § 136-112 (1986); *see, e.g., Williams v. Highway Commission*, 252 N.C. 514, 519-20, 114 S.E.2d 340, 344 (1960); *Highway Commission v. Black*, 239 N.C. 198, 203, 79 S.E.2d 778, 783 (1954). This rule is *in accord with the general provisions for eminent domain found in* N.C.G.S. § 40A-63, which states:

The determination of the amount of compensation shall reflect the value of the property immediately prior to the filing of the petition [for an appraisal] or the complaint [to condemn property] and except as provided in the following sections shall not reflect an increase or decrease due to the condemnation. The day of the filing of a petition or complaint shall be the date of valuation of the interest taken.

N.C.G.S. § 40A-63 (1984); *see also* N.C.G.S. § 40A-65(a) (1984) (to the same effect as N.C.G.S. § 40A-63). That the legislature has provided the landowner may not benefit in a condemnation proceeding from any increase in the value of land due to the condemnation itself is some evidence that the legislature did not intend for the DOT to profit by reconveying that land to the original owner at an increased value due, at least in part, to that construction project itself.

**FERRELL v. DEPT. OF TRANSPORTATION**

[334 N.C. 650 (1993)]

Department shall give first consideration to any offer to pur-
chase the property made by the former owner. . . . [I]f the
Department acquires the property by condemnation and deter-
mines that the property or a part of that property is no longer
needed for highway right-of-way, *the Department of Transpor-
tation may reconvey the property to the former owner upon pay-
ment by the former owner of the full price paid to the owner
when the property was taken, the cost of any improvements,
together with interest at the legal rate to the date when the
decision was made to offer the return of the property.*

1991 Sess. Laws c. 979 s. 1 (emphasis added) (codified at N.C.G.S.
§ 136-19(a), (b) (Supp. 1992) ).

When a statute is unclear and the legislature subsequently
enacts a clarifying amendment, that amendment may be referred
to for guidance in construing the earlier statute. *Childers v. Parker's,
Inc.*, 274 N.C. 256, 260, 162 S.E.2d 481, 484 (1968); *Thomas v. Barnhill*,
102 N.C. App. 551, 553-54, 403 S.E.2d 102, 103-04 (1991). To deter-
mine whether the amendment clarifies the prior law or alters it
requires a careful comparison of the original and amended statutes.
Often the amendment is "to improve the diction, or to clarify that
which was previously doubtful. Whereas it is logical to conclude
that an amendment to an unambiguous statute indicates the intent
to change the law, no such inference arises when the legislature
amends an ambiguous provision." *Childers*, 274 N.C. at 260, 162
S.E.2d at 484 (citations omitted). Likewise, when a statute that
fails expressly to address a particular point is subsequently amend-
ed to address that point, the amendment is more likely to be
clarifying than altering. Since here the statute before amendment
provided no express guidance as to selling price, the amendment
which addresses the selling price is best interpreted as clarifying
the statute as it existed before the amendment. It is, therefore,
strong evidence of what the legislature intended when it enacted
the original statute.[4]

Furthermore, if the legislature intended the DOT to offer the
property at fair market value, it presumably would have provided

---

4. We recognize that the amended statute limits its application to the "former
owner," N.C.G.S. § 136-19(a), (b) (as amended), whereas the statute at issue in
this case clearly applies to the original owner and "the heirs or assigns of such
owner." N.C.G.S. § 136-19. Both statutes are clear as to whom they apply and
need no interpretation in this regard. The former statute, however, is ambiguous
as to the price at which the DOT must reconvey the land to original owners or assigns

the means for determining fair market value. When the legislature has expressed an intent that fair market value be used in various transactions, it has expressly set forth the method for determining it. *See, e.g.,* N.C.G.S. § 136-109 (1986) (upon request of landowner or DOT, clerk of court shall appoint three disinterested freeholders to appraise the fair market value of the condemned property); N.C.G.S. § 54-166(c) (1990) (member of association who objects to merger or consolidation is entitled to fair market value of his interest; clerk of court appoints three disinterested appraisers to determine fair market value); *see also* N.C.G.S. §§ 46-7 & -10 (1984) (where land is to be partitioned, court shall appoint three disinterested commissioners, who have specific powers and obligations, to divide land into equal shares based on "value"). When the legislature amended the statute in 1992, in addition to authorizing the DOT to reconvey the property to the original owner for the initial award, it provided for the sale of unnecessary land generally. This part of the 1992 enactment states: "The Department may refuse any offer that is less than the current market value of the property, *as determined by the Department.*" N.C.G.S. § 136-19(a) (Supp. 1992) (emphasis added). If the intent behind the statute at issue in this case were that fair market value govern the sale of land to the original owner, the legislature presumably would have specified the method of determining fair market value.[5] The legislature's silence as to the method of determining fair market value indicates that it contemplated the more simple solution of conveying the property for the initial award plus interest and the cost of any improvements.

Defendant argues that reconveying the land for less than fair market value would result in a windfall to the former landowner. The value of land, however, is often affected by developments

---

and calls for interpretation as to this aspect of it. We thus refer to the amended statute for guidance only as to the price at which the legislature intended in the statute before us that the land be sold back to the original owner or assigns. We also note that plaintiff Ferrell originally owned an eighty percent interest in the property jointly with his wife. At the time this action was brought Ferrell owned the entire eighty percent interest.

5. Subsequent to Minnesota's amended statute, which set the price for which unneeded land is sold to the former owner equal to "appraised current market value," the Minnesota Court of Appeals noted at least three methods of determining the fair value of previously condemned land: an independent appraisal; a jury determination; and a determination by the court after receiving appraisals from the state, the landowner, and an independent appraiser. *Mortenson v. Minnesota,* 446 N.W.2d 674, 677, 677 n.2 (Minn. Ct. App. 1989).

FERRELL v. DEPT. OF TRANSPORTATION

[334 N.C. 650 (1993)]

in surrounding areas; and landowners often benefit when the state purchases and improves adjacent parcels of land. Plaintiffs in this case would have experienced such a benefit if the DOT had taken only the land that was eventually determined to be necessary for highway construction. Because the intent of the legislature was to return the parties to the positions they would have been in if the DOT had not originally taken more land than was necessary, the former landowner is necessarily entitled to any appreciation in the property.

Defendant also argues that the Board of Transportation has interpreted N.C.G.S. § 136-19 as permitting the DOT to reconvey land at fair market value, and that the Board's interpretation is entitled to deference. Defendant refers to a rule which states:

> Should the Department of Transportation purchase a property in its entirety for right of way purposes and at a later date reduce the right of way, thus creating a residue, the original owner shall be offered the first refusal to purchase the residue. The purchase price is to be negotiated with the former owner or other prospective buyers taking into consideration the purchase price paid by the Department of Transportation, the current value of the property, and the proportionate part of the entire tract being retained by the Department of Transportation. In the event the former owner does not desire to repurchase the residue area, the residue shall be offered for sale at public sale with the right reserved to reject all bids.

19A NCAC 2B .0143(b) (February 1988). While "the construction of statutes adopted by those who execute and administer them is evidence of what they mean," *Comr. of Insurance v. Automobile Rate Office*, 294 N.C. 60, 76, 241 S.E.2d 324, 329 (1978), that interpretation is not binding on the courts, *MacPherson v. City of Asheville*, 283 N.C. 299, 196 S.E.2d 200 (1973). Such interpretations "will be given consideration by the Court, though [they are] not controlling." *Bottling Co. v. Shaw, Comr. of Revenue*, 232 N.C. 307, 310, 59 S.E.2d 819, 822 (1950). After giving consideration to the other aids to construction in addition to this one, we conclude our construction of the statute, although contrary to that of the DOT, is the more reasonable one and is, therefore, controlling.

We hold, therefore, that N.C.G.S. § 136-19, as it existed before the 1992 amendments, requires DOT to reconvey unneeded property previously condemned to the former owner and assigns at a

price equal to the condemnation award plus interest and the cost of any improvements made to the property by DOT.

In the case before us there is no evidence or contention that DOT incurred any cost (other than the cost of the project itself for which the property was condemned) in improving the subject property. Its reconveyance to plaintiffs, as the Court of Appeals held, must, therefore, be for a price equal to the initial condemnation award plus interest.

AFFIRMED.

Justices WEBB and MITCHELL dissent.

Justice PARKER did not participate in the consideration or decision of this case.