DAISY ABBOTT, Plaintiff v. NORTH CAROLINA BOARD OF NURSING, Defendant

No. COA05-666

(Filed 4 April 2006)

**1. Immunity; Nurses— sovereign immunity—Board of Nursing—wrongful termination**

The trial court did not err by dismissing plaintiff's complaint against the N.C. Board of Nursing (Board) for wrongful termination on the basis of sovereign immunity because the legislative enactment, governmental appointment of members to defendant Board, and public purpose performed by the Board make the Board an agency of the state entitled to the defense of sovereign immunity.

**2. Appeal and Error— preservation of issues—failure to make assignment of error in brief**

Although plaintiff contends the trial court erred by relying on documentation submitted by defendant Board of Nursing (Board) in determining whether it is a state agency, this assignment of error is dismissed because: (1) this argument does not relate to plaintiff's assignments of error, and thus, is not a matter properly before the Court of Appeals; and (2) this assignment of error is irrelevant when the Court of Appeals has already determined that the Board is a state agency solely by examining the statutes.

**3. Appeal and Error— preservation of issues—failure to raise issue**

Although the dissent contends that plaintiff's complaint for wrongful termination states a claim for relief under N.C.G.S. § 9-32 which would waive sovereign immunity, this issue is not reached because it was never raised by the parties or addressed

by the trial court, and plaintiff failed to allege in her complaint that sovereign immunity had been waived.

**4. Appeal and Error— preservation of issues—failure to state legal basis**

Although plaintiff contends the trial court erred by failing to hear or consider plaintiff's other arguments regarding issues related to the Board of Nursing's motion to dismiss, this assignment of error is dismissed because plaintiff failed to state the legal basis upon which the error was assigned as required by N.C. R. App. P. 10(c)(1).

Judge WYNN concurring in part and dissenting in part.

Appeal by plaintiff from an order entered 12 November 2004 by Judge Stafford G. Bullock in Franklin County Superior Court. Heard in the Court of Appeals 10 January 2006.

*Joyce L. Davis & Associates, by Everette P. Winslow, for plaintiff-appellant.*

*Parker Poe Adams & Bernstein, by Renee J. Montgomery and Susan L. Dunathan, for defendant-appellee.*

HUNTER, Judge.

Daisy Abbott ("plaintiff") appeals from an order of the trial court dismissing on sovereign immunity grounds her claim for relief against her employer, the North Carolina Board of Nursing ("the Board"). Plaintiff contends the Board is not a state agency to which sovereign immunity applies. We affirm the order of the trial court.

On 27 May 2004, plaintiff filed a complaint in Franklin County Superior Court alleging, *inter alia*, that the Board wrongfully terminated her employment. The complaint contained no allegations regarding any waiver of sovereign immunity by the Board. The Board filed a motion to dismiss pursuant to Rules 12(b)(1), (2), and (6) of the North Carolina Rules of Civil Procedure. By order entered 12 November 2004, the trial court concluded that plaintiff's claims were barred by the doctrine of sovereign immunity and dismissed the complaint. Plaintiff appeals.

[1] Plaintiff argues that the trial court erred in dismissing her claims on the basis of sovereign immunity and in failing to hear or consider her other arguments prior to ruling. "Under the doctrine of sover-

eign immunity, the State is immune from suit absent waiver of immunity." *Meyer v. Walls*, 347 N.C. 97, 104, 489 S.E.2d 880, 884 (1997). The doctrine also applies to state agencies being sued for the performance of a governmental function. *Vest v. Easley*, 145 N.C. App. 70, 73, 549 S.E.2d 568, 572 (2001). Plaintiff contends that the Board is not a state agency and, therefore, sovereign immunity does not apply. We disagree.

The Board was created by the General Assembly. N.C. Gen. Stat. § 90-171.21 (2005). The Board's duties include: (1) licensing nurses in the state, (2) establishing criteria for nursing programs in the state, (3) prosecuting persons violating the Nursing Practice Act, (4) reviewing and approving nursing programs in the state, and (5) approving continuing education for nurses. N.C. Gen. Stat. § 90-171.23(b) (2005). The Governor and General Assembly appoint three members of the Board. N.C. Gen. Stat. § 90-171.21(b). The legislative enactment, governmental appointment of members to the Board, and public purpose performed by the Board make the Board an agency of the state entitled to the defense of sovereign immunity. *See Mazzucco v. Board of Medical Examiners*, 31 N.C. App. 47, 49, 228 S.E.2d 529, 531 (1976) (citation omitted) (stating that the Board of Medical Examiners was created by statute " 'to properly regulate the practice of medicine and surgery[,]' " and is a state agency). We therefore overrule this assignment of error.

[2] Plaintiff next argues that the trial court erred in relying on documentation submitted by the Board in determining whether it is a state agency. This argument does not relate to plaintiff's assignments of error. "[T]he 'scope of appellate review is limited to the issues presented by assignments of error set out in the record on appeal; where the issue presented in the appellant's brief does not correspond to a proper assignment of error, the matter is not properly considered by the appellate court.' " *Walker v. Walker*, 174 N.C. App. 778, 781, 624 S.E.2d 639, 641 (2005) (quoting *Bustle v. Rice*, 116 N.C. App. 658, 659, 449 S.E.2d 10, 11 (1994)). Moreover, as we have already determined that the Board is a state agency solely by examining the statutes, this assignment of error is irrelevant. Accordingly, this assignment of error is dismissed.

[3] The dissent contends that plaintiff's complaint states a claim for relief pursuant to section 9-32 of the General Statutes, which, the dissent would hold, waives the State's sovereign immunity. Although the dissent's interpretation of section 9-32 is compelling, we do not reach

this issue, as it was never raised by the parties. It was not the basis of any assignment of error; it was never addressed or argued by the parties, nor was it ever considered by the trial court. Indeed, plaintiff failed to allege in her complaint that sovereign immunity had been waived. *See Paquette v. County of Durham*, 155 N.C. App. 415, 418, 573 S.E.2d 715, 717 (2002) (citation omitted) (stating that, "[i]n order to overcome a defense of governmental immunity, the complaint must specifically allege a waiver of governmental immunity. Absent such an allegation, the complaint fails to state a cause of action"). Rather, the issue was raised for the first time by the dissent during oral argument of the case. The dissent's position in effect creates an appeal for plaintiff and places the Board at a distinct disadvantage. Indeed, the Board has filed a "Motion for Leave to File Additional Authority and Argument" in which it requests the opportunity to address the question of whether section 9-32 waives sovereign immunity, because when the issue was raised by the dissent at oral argument, "[c]ounsel had not researched this specific issue and were able only to provide discussion of generally applicable law in response to the Court's questions." "It is not the role of the appellate courts . . . to create an appeal for an appellant." *Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005). "[T]he Rules of Appellate Procedure must be consistently applied; otherwise, the Rules become meaningless, and an appellee is left without notice of the basis upon which an appellate court might rule." *Id.*

The dissent nevertheless asserts that the Board moved to dismiss plaintiff's complaint pursuant to Rules 12(b)(1) (subject matter jurisdiction) and Rule 12(b)(2) (personal jurisdiction). The dissent reasons that, as jurisdictional issues may be addressed for the first time on appeal, we may therefore properly address the issue of waiver *ex mero motu*. However, the Board only moved to dismiss plaintiff's third claim, negligent infliction of emotional distress, pursuant to Rules 12(b)(1) and (2). The Board moved to dismiss plaintiff's statutory claim, violation of section 9-32, pursuant to Rule 12(b)(6) (failure to state a claim). On appeal, the parties moreover stipulated that the trial court had both subject matter jurisdiction and personal jurisdiction over the matter. Because the question of whether section 9-32 waives sovereign immunity was never addressed by the trial court or the parties, the issue is not properly before us.

[4] Plaintiff's remaining assignment of error states: "The lower court erred in failing to hear or consider [plaintiff's] other arguments regarding issues relating to [the Board's] motion to dismiss." This

assignment of error fails to state the "legal basis upon which error is assigned." N.C.R. App. P. 10(c)(1); *see also Walker*, 174 N.C. App. at 780, 624 S.E.2d at 641. We therefore dismiss this assignment of error.

The order of the trial court dismissing plaintiff's complaint is hereby affirmed.

Affirmed.

Judge JACKSON concurs.

Judge WYNN concurs in part and dissents in part in a separate opinion.

WYNN, Judge, concurring in part, dissenting in part.

Any modification or waiver of the doctrine of sovereign immunity which insulates the State from suit must come from the General Assembly. *See Steelman v. City of New Bern*, 279 N.C. 589, 595, 184 S.E.2d 239, 243 (1971). In this case, the trial court dismissed (on sovereign immunity grounds) Plaintiff's claim that her employer terminated her employment because of her jury duty obligations. I agree with the majority that the Nursing Board is a state agency; however, because the complaint alleges a cause of action under section 9-32 of the North Carolina General Statutes which makes an exception to the State's sovereign immunity with respect to employees terminated due to jury duty, I would hold that the trial court erred in dismissing Plaintiff's statutory claim for relief.[1]

From the outset, I point out that while the majority correctly notes that neither party addressed the issue of waiver in their arguments, this issue is nonetheless properly before this Court. Indeed, the Nursing Board moved to dismiss pursuant to Rule 12(b)(1) (lack of subject matter jurisdiction) and this Court can consider questions of subject matter jurisdiction regardless of whether the parties raise the issue in their briefs. Significantly, the question of subject matter jurisdiction may properly be raised for the first time on appeal. N.C. Gen. Stat. § 1A-1, Rule 12(h)(3) (2005). "Furthermore, this Court may raise the question on its own motion even when it was not argued by the parties in their briefs." *State v. Jones*, 172 N.C. App. 161, 163, 615 S.E.2d 896, 897 (2005) (quoting *Bache Halsey Stuart*,

---

1. I agree that Plaintiff's remaining arguments do not relate to her assignments of error and must be dismissed.

ABBOTT v. N.C. BD. OF NURSING

[177 N.C. App. 45 (2006)]

*Inc. v. Hunsucker,* 38 N.C. App. 414, 421, 248 S.E.2d 567, 571 (1978));
*see also Jenkins v. Winecoff,* 267 N.C. 639, 641, 148 S.E.2d 577, 578
(1966) (question of subject matter jurisdiction not argued in briefs
but the Court considered the issue *ex mero motu*).

Moreover, this Court has held the defense of sovereign immunity
is a matter of personal jurisdiction that falls under Rule 12(b)(2) of
the North Carolina Rules of Civil Procedure. *Zimmer v. N.C. Dep't of
Transp.,* 87 N.C. App. 132, 134, 360 S.E.2d 115, 116 (1987).[2] The stand-
ard of review to be applied by the trial court in deciding a motion
under Rule 12(b)(2) is that "[t]he allegations of the complaint must
disclose jurisdiction although the particulars of jurisdiction need not
be alleged." *Bruggeman v. Meditrust Acquisition Co.,* 138 N.C. App.
612, 615, 532 S.E.2d 215, 217, *appeal dismissed and disc. review
denied,* 353 N.C. 261, 546 S.E.2d 90-91 (2000). As Ms. Abbott's
Complaint includes a claim for relief pursuant to section 9-32 of the
North Carolina General Statutes, and section 9-32 allows the State to
be sued, the issue of sovereign immunity or personal jurisdiction was
disclosed in the Complaint. *See id.* Therefore, this Court can properly
look at the Complaint as a whole to decide whether sovereign immu-
nity bars the suit.

The facts presented in the pleadings show that: Plaintiff Daisy
Abbott was employed by Defendant North Carolina Board of Nursing
as a receptionist from 26 February 2001, until the Nursing Board ter-
minated her on 28 May 2003. On or about 12 April 2003, Ms. Abbott
received a summons from the Franklin County Clerk of Court inform-
ing her that she was to serve jury duty from 5 May 2003 until 9 May
2003. Ms. Abbott informed her supervisor Brenda McDougal and pro-
vided Ms. McDougal with a copy of the jury summons. Ms. Abbott
arrived at the courthouse to begin serving jury duty at 2:30 p.m. on 5
May 2003. At approximately 4:30 p.m., she was released for the day
but informed that she was not released from duty and must call the
Jury Message System after 11:00 a.m. the next day to determine
whether or not she was to serve. Ms. Abbott got through to the Jury
Message System at approximately noon on 6 May 2003, and was
informed that she was released from jury duty. Ms. Abbott telephoned
Ms. McDougal and informed her that she had been released from jury
duty and would report to work the next day.

---

2. Our Supreme Court has yet to decide whether the defense of sovereign immu-
nity is a matter of personal or subject matter jurisdiction. *Teachy v. Coble Dairies,
Inc.,* 306 N.C. 324, 328, 293 S.E.2d 182, 184 (1982).

On 28 May 2003, the Nursing Board terminated Ms. Abbott for falsely claiming that she was serving on jury duty on 6 May 2003. On 29 May 2003, Alice Faye Hunter, Franklin County Clerk of Court, telephoned Polly Johnson, the Nursing Board's executive director, and informed her that Ms. Abbott was not released from jury duty until 6 May 2003. Ms. Hunter then sent a letter to Ms. Johnson confirming their conversation.

On 27 May 2004, Ms. Abbott filed a complaint claiming, *inter alia*, the Nursing Board violated section 9-32 of the North Carolina General Statutes. The Nursing Board filed a motion to dismiss pursuant to Rules 12(b)(1), (2), and (6) of the North Carolina Rules of Civil Procedure. By order entered 12 November 2004, the trial court concluded that Ms. Abbott's claims are barred by the doctrine of sovereign immunity and dismissed the complaint.

"Under the doctrine of sovereign immunity, the State is immune from suit absent waiver of immunity." *Meyer v. Walls*, 347 N.C. 97, 104, 489 S.E.2d 880, 884 (1997). The doctrine also applies to State agencies being sued for the performance of a governmental function. *Vest v. Easley*, 145 N.C. App. 70, 73, 549 S.E.2d 568, 572 (2001).

The doctrine of sovereign immunity is judge-made in North Carolina and was first adopted by our Supreme Court in *Moffitt v. City of Asheville*, 103 N.C. 237, 9 S.E. 695 (1889). Our Supreme Court has recently recited a brief history of the doctrine of sovereign immunity in North Carolina in *Corum v. Univ. of North Carolina*,

> The doctrine originated with the feudal concept that the king could do no wrong and culminated with its judicial recognition in the English case of *Russell v. Men of Devon*, 2 T.R. 667, 100 Eng. Rep. R. 359 (1788). North Carolina adopted the common law of England as it existed in 1776. Sovereign immunity was not a part of the common law of England at that time because the holding of *Men of Devon* with respect to sovereign immunity was not promulgated until 1788. Accordingly, early North Carolina decisions expressly rejected the doctrine. *Steelman v. City of New Bern*, 279 N.C. 589, 184 S.E.2d 239 (1971). Only with the *Moffitt* decision was sovereign immunity made a part of our law. It is, nevertheless, firmly established in the law of our State today and has been recognized by the General Assembly as the public policy of the State. The doctrine of sovereign immunity has been modified, but never abolished.

*Corum v. Univ. of North Carolina*, 330 N.C. 761, 785, 413 S.E.2d 276, 291 (1992); *see also Steelman*, 279 N.C. 589, 184 S.E.2d 239.

Under North Carolina law, any modification or waiver of the doctrine of sovereign immunity must come from the General Assembly. *See Guthrie v. N.C. State Ports Auth.*, 307 N.C. 522, 534, 299 S.E.2d 618, 625 (1983) ("It is for the General Assembly to determine when and under what circumstances the State may be sued." (emphasis and citation omitted)); *Steelman*, 279 N.C. at 595, 184 S.E.2d at 243 ("[A]ny further modification or the repeal of the doctrine of sovereign immunity should come from the General Assembly, not this Court.").

Indeed, the General Assembly has waived or modified sovereign immunity in numerous statutes. *See, e.g., RPR & Assocs., Inc. v. State*, 139 N.C. App. 525, 528, 534 S.E.2d 247, 250 (2000), *aff'd per curium*, 353 N.C. 362, 543 S.E.2d 480-81 (2001) (sovereign immunity waived for actions involving contract claims against the State and its agencies pursuant to N.C. Gen. Stat. § 143-135.3 (1999)); *Faulkenbury v. Teachers' & State Emples. Ret. Sys. of N.C.*, 345 N.C. 683, 696, 483 S.E.2d 422, 430 (1997) (insofar as the state and local governments have sovereign immunity from paying interest, it is waived by N.C. Gen. Stat. §§ 135-1(2) and 128-21(2)); *Ferrell v. Dep't of Transp.*, 334 N.C. 650, 655, 435 S.E.2d 309, 313 (1993) (legislature has implicitly waived the Department of Transportation's sovereign immunity to the extent of the rights afforded in N.C. Gen. Stat. § 136-19 (1986)); *State v. Taylor*, 322 N.C. 433, 435, 368 S.E.2d 601, 602 (1988) (sovereign immunity waived to suits involving "claims of title to land" pursuant to N.C. Gen. Stat. § 41-10.1); *Minneman v. Martin*, 114 N.C. App. 616, 619, 442 S.E.2d 564, 566 (1994) ("The Whistleblower Act, in providing for specific remedies, represents a clear statutory waiver of sovereign immunity to redress violations of the nature proscribed in G.S. § 126-85."); *Zimmer v. N.C. Dep't of Transp.*, 87 N.C. App. 132, 134, 360 S.E.2d 115, 117 (1987) ("By enactment of the Tort Claims Act, . . . the General Assembly partially waived the sovereign immunity of the State to the extent that it consented that the State could be sued for injuries proximately caused by the negligence of a State employee acting within the scope of his employment." (citation omitted)).

Thus, the following question arises in this appeal: Did the General Assembly modify the State's sovereign immunity by enacting section 9-32 of the North Carolina General Statutes; thus allowing state and state agency employees to sue their employer for violations of the section? This question must be answered in the affirmative; section

9-32 expressly waives sovereign immunity, allowing Ms. Abbott to proceed with her complaint against the Nursing Board on the claim of violation of section 9-32 of the North Carolina General Statutes.

Section 9-32 provides in pertinent part:

(a) No employer may discharge or demote any employee because the employee has been called for jury duty, or is serving as a grand juror or petit juror.

(b) *Any employer who violates any provision of this section shall be liable in a civil action* for reasonable damages suffered by an employee as a result of the violation, and an employee discharged or demoted in violation of this section shall be entitled to be reinstated to his former position. The burden of proof shall be upon the employee.

N.C. Gen. Stat. § 9-32 (2005) (emphasis added). The purpose of this statute is to prevent the termination of all employees because they are called to serve on a jury, a vital role of our judicial system. *See* 1987 N.C. Sess. Laws 702. "[S]tatutory schemes conferring rights to citizens imply a waiver of sovereign immunity." *Ferrell*, 334 N.C. at 655, 435 S.E.2d at 313. Section 9-32 confers a right to citizens that they shall not be terminated or demoted by their employer for serving on a jury. This implies a modification of sovereign immunity as the General Assembly conferred a right to all citizens. *See id.*

The General Assembly explicitly stated that *any employer* who violated the statute shall be liable in a civil action. The State and state agencies are employers. The statute does not exempt the State from complying with section 9-32; therefore, section 9-32 applies to the State and state agencies. The General Assembly has modified the State's sovereign immunity for actions where the State, as an employer, discharges or demotes an employee for being called for jury duty. *See Steelman*, 279 N.C. at 595, 184 S.E.2d at 243. The General Assembly balanced two competing public policies—the need to protect employees whom are called to serve on a jury, a key role in our judicial system, and the need to protect the State from being sued due to its performance of a governmental function. *See State v. Cantwell*, 142 N.C. 604, 608, 55 S.E. 820, 821 (1906) ("It is impossible for the State to protect life, liberty, and property without the aid of juries. The system is a vital part of the machinery of government. It is the undoubted duty of the legislative department to provide for the selection of jurors in such way as shall best subserve the public wel-

fare." (citation omitted)). By modifying the State's sovereign immunity in this statute, the General Assembly effectuated its goal of protecting *all* employees who are called to jury service, not just those in the private sector.

Ms. Abbott named as a cause of action in her complaint a violation of section 9-32 of the North Carolina General Statutes. As the legislature had included the State and state agencies as being subject to suit in this section, Ms. Abbott did not need to include in her pleadings that the Nursing Board had waived its sovereign immunity, as there was no immunity to waive.

Accordingly, the trial court erred in granting the Nursing Board's motion to dismiss with regards to Ms. Abbott's first claim for relief, violation of section 9-32 of the North Carolina General Statutes. However, the trial court properly dismissed Ms. Abbott's second and third claims for relief pursuant to the doctrine of sovereign immunity.