RHONDA THOMAS, PLAINTIFF v. CAROL BARNHILL, DEFENDANT

No. 9014SC478

(Filed 16 April 1991)

**Evidence § 50 (NCI3d) — chiropractor — testimony about muscles — admissibility**

A chiropractor could properly testify as an expert in a personal injury action with regard to muscle strain, since, pursuant to the 1989 amendment to N.C.G.S. § 90-157.2, a chiropractor may testify about the "physiological dynamics of contiguous spinal structures which can cause neurological disturbances."

**Am Jur 2d, Expert and Opinion Evidence § 226.**

APPEAL by defendant from judgment entered 7 December 1989 by *Judge Robert H. Hobgood* in DURHAM County Superior Court. Heard in the Court of Appeals 29 November 1990.

This is a personal injury action arising from an automobile accident. On 17 April 1986 plaintiff was driving her car on a rural highway when the car driven by the defendant hit her from behind. At trial plaintiff's witnesses included a chiropractor and a neurosurgeon, both of whom had treated her. The chiropractor

testified about his diagnosis and treatment of the plaintiff and opined that she had received a 5 to 6 percent permanent disability. The neurosurgeon then testified regarding his diagnosis and treatment of plaintiff and answered a hypothetical question regarding her permanent disability. The jury returned a verdict in favor of the plaintiff in the amount of $33,351.00. Defendant appeals.

*Michael E. Mauney for the plaintiff-appellee.*

*Reynolds, Bryant and Patterson, P.A., by Joseph B. Chambliss, Jr., for the defendant-appellant.*

EAGLES, Judge.

Defendant first argues that the trial court erred by allowing the chiropractor to testify about matters outside the scope of his field of expertise. We disagree.

Defendant objects to the following diagnosis testimony by the chiropractor:

Moderate severe strain of the cervical spine with complicating subluxation complex syndrome of the cervical spine with associated radiculitis and myofascitis. Moderate severe strain to the mid thoracic area and moderate strain to the lumbar area with complicating subluxation syndromes of the above areas with associated myofascitis.

We note that myofascitis means "[i]nflammation of a muscle and/or the fascia which covers it." 2 J. Schmidt, Attorneys' Dictionary of Medicine and Word Finder at M-212 (1991). Fascia means "[a] thin but often tough layer of tissue, or membrane, whose chief function is that of covering, or of holding things together, like a sac or capsule. . . . Fascia covers individual muscles, adding to their functional efficiency." *Id.* at F-24. Defendant contends that through this testimony the chiropractor improperly testified about injury to muscle. Defendant relies solely on *Ellis v. Rouse*, 86 N.C. App. 367, 357 S.E.2d 699 (1987). In *Ellis* this Court said that the trial court properly excluded a chiropractor's testimony regarding the strain or sprain of a muscle as beyond the field of chiropractic as defined by statute.

At the time *Ellis* was decided, G.S. 90-157.2 provided:

A Doctor of Chiropractic, for all legal purposes, shall be considered an expert in his field and, when properly qualified,

may testify in a court of law as to etiology, diagnosis, prognosis, and disability, including anatomical, neurological, physiological, and pathological considerations within the scope of chiropractic.

Since the *Ellis* decision, the General Assembly has amended G.S. 90-157.2 to read as follows:

A Doctor of Chiropractic, for all legal purposes, shall be considered an expert in his field and, when properly qualified, may testify in a court of law as to:

(1) The etiology, diagnosis, prognosis, and disability, including anatomical, neurological, physiological, and pathological considerations within the scope of chiropractic, as defined in G.S. 90-151; and

(2) The physiological dynamics of contiguous spinal structures which can cause neurological disturbances, the chiropractic procedure preparatory to, and complementary to the correction thereof, by an adjustment of the articulations of the vertebral column and other articulations.

In the amended version of G.S. 90-157.2, the General Assembly added language to provide that a chiropractor may testify about the "physiological dynamics of contiguous spinal structures which can cause neurological disturbances." The goal in interpreting any statute is to ascertain the meaning and intention of the legislature. *McLean v. McLean*, 323 N.C. 543, 374 S.E.2d 376 (1988). "Interpretation is of course unnecessary where the words used are so plain and unambiguous that no doubt can exist as to legislative intent and the proper application of the statutory language to a particular factual situation; but when the words used leave reasonable doubt as to what the Legislature intended with respect to a particular factual situation, it is proper to look to legislative history, judicial interpretation of prior statutes dealing with the question, and the changes, if any, made following a particular interpretation." *Ingram v. Johnson*, 260 N.C. 697, 699, 133 S.E.2d 662, 664 (1963).

We think that the legislative history is helpful in interpreting the new language in G.S. 90-157.2. The amendment was entitled in part: "An Act to Clarify the Subjects About Which a Chiropractor May Testify as an Expert Witness." 1989 N.C. Sess. Laws ch. 555. The House Judiciary Committee minutes suggest that the purpose of subsection (2) was "to cure the confusion in the case

THOMAS v. BARNHILL

[102 N.C. App. 551 (1991)]

law created by the inconsistent decisions" in *Ellis v. Rouse*, 86 N.C. App. 367, 357 S.E.2d 699 (1987), and *Smith v. Buckhram*, 91 N.C. App. 355, 372 S.E.2d 90 (1988), *disc. review denied*, 324 N.C. 113, 377 S.E.2d 236 (1989). Minutes of the House Judiciary Committee (June 29, 1989). In *Ellis v. Rouse* this Court said that the testimony of a chiropractor to the strain or sprain of a muscle was beyond the field of chiropractic as defined by G.S. 90-143. In *Smith v. Buckhram* this Court held that testimony regarding ligaments of the spine was within the scope of chiropractic as defined in G.S. 90-143.

We conclude that by enacting this amendment the General Assembly did not intend to expand the scope of chiropractic but intended merely to clarify the law. Here, the General Assembly added language to the statute that specifically provides that a chiropractor may testify to "[t]he physiological dynamics of contiguous spinal structures which can cause neurological disturbances." The former statute did not contain a similar provision. Additionally, legislative history suggests that the General Assembly intended "to allow chiropractors to testify as to the spinal column and the physical structures that support and/or complement it." Minutes of the House Judiciary Committee (June 29, 1989). The changes in the language of G.S. 90-157.2 and the legislative history lead us to conclude that the General Assembly thought that this Court's decision in *Ellis v. Rouse* was overly restrictive. Here, we hold that the chiropractor's expert testimony was within the scope of G.S. 90-143 and 90-157.2. We believe that this interpretation is consistent with the language of the statutes and the legislative history surrounding the adoption of the 1989 clarifying amendment to G.S. 90-157.2. Accordingly, this assignment of error is overruled.

Defendant's remaining assignments of error are also without merit and are overruled. Defendant argues that the trial court erred by allowing the chiropractor to testify to his opinion on the prognosis for plaintiff's neck and back injuries. Defendant cites no cases to support her position but merely argues that the opinion was supported by "generalities as opposed to specific facts testified to or admitted into evidence." We disagree. A chiropractor is allowed to testify as to prognosis and disability under G.S. 90-157.2(1). Here, the chiropractor had personally examined and treated the plaintiff and had adequate facts and data on which to base his expert opinion.

.

Defendant also argues that the trial court erred in allowing the neurosurgeon to answer a hypothetical question regarding the permanency of plaintiff's injuries on the grounds that the medical evidence did not support his testimony. "A proper hypothetical question lists facts which counsel hopes will be found by the jury to exist and asks if, assuming that the jury will so find, the expert has an opinion satisfactory to himself on the subject of inquiry." 1 H. Brandis, Brandis on North Carolina Evidence § 137 (3d ed. 1988). A proper question lists only facts that "are directly in evidence or may justifiably be inferred therefrom." *Id.* The transcript indicates that the hypothetical question posed to the neurosurgeon listed only facts that were in evidence or could be inferred from the evidence. We find no error.

Finally, defendant argues that the trial court erred in instructing the jury on permanent injury in that there was no evidence to support a finding of permanent injury. As noted, the testimony of the chiropractor and the neurosurgeon was properly admitted and supported the charge to the jury on permanent injury.

For the reasons stated we find no error.

No error.

Judges ARNOLD and PARKER concur.