BONNIE WOOTEN, Plaintiff v. LORA E. WARREN, by her guardian ad litem, Loretta Gilmer, Defendant

No. 9422SC298

(Filed 20 December 1994)

**1. Trial § 261 (NCI4th)— summary judgment denied—basis for denial of subsequent directed verdict motion—error**

The earlier denial of a motion for summary judgment should not in any way be considered a barrier to later consideration of a motion for directed verdict; however, the trial court's refusal to consider the directed verdict motion, though improper, did not prejudice defendant since plaintiff met her burden of proving that the action was instituted within the period required by the applicable statute of limitations, and the trial court therefore would not have granted the motion had it been considered.

**Am Jur 2d, Trial § 861.**

**2. Evidence and Witnesses § 2246 (NCI4th)— expert in chiropractic—testimony within expertise of chiropractor**

In an action to recover for injuries sustained in an automobile accident, the trial court did not err in allowing an expert in chiropractic to testify concerning his treatment of plaintiff, his diagnosis, and his opinion that her injuries in the accident caused her subsequent complaints, since such testimony was within the expertise of a chiropractor as authorized by N.C.G.S. § 90-157.2.

**Am Jur 2d, Expert and Opinion Evidence § 226.**

**Chiropractor's competency as expert in personal injury action as to injured person's condition, medical requirements, nature and extent of injury, and the like. 52 ALR2d 1384.**

**3. Damages § 165 (NCI4th)— personal injury—instruction on permanency proper—instruction on pre-existing injury improper**

In an action to recover for injuries sustained by plaintiff in an automobile accident, the evidence was sufficient to support an instruction on permanent injury but insufficient to support instructions on the aggravation or activation of a preexisting condition.

**Am Jur 2d, Damages §§ 1009, 1010.**

**4. Damages § 142 (NCI4th)— life expectancy—necessity for introducing mortuary tables**

Though life expectancy may be determined from evidence of the plaintiff's health, constitution, habits and the like, as well as mortuary tables, the better practice is to introduce the mortuary tables in addition to other evidence.

**Am Jur 2d, Damages §§ 988 et seq.**

Appeal by defendant from judgment entered 6 December 1993 by Judge John Mull Gardner in Davidson County Superior Court. Heard in the Court of Appeals 26 October 1994.

Plaintiff sued defendant for negligently causing personal injuries which plaintiff sustained in an automobile collision. The complaint alleged that on 2 April 1987, defendant, while travelling north on Highway 52 and while approaching the vehicle plaintiff was travelling in, made a left-hand turn directly in front of plaintiff's vehicle and into plaintiff's lane of travel, causing a collision between the two vehicles. Pursuant to N.C. Gen. Stat. § 1A-1, Rule 15(a), plaintiff filed a motion on 19 October 1990 to amend her complaint to allege damages in excess of $10,000 and to add a claim for attorneys' fees. On 23 November 1991, plaintiff filed another motion to amend her complaint to reflect that the date of the accident was 2 April 1985 instead of 2 April 1987. These motions were allowed by orders entered 2 May 1991 and 5 March 1992. The amended complaints were filed respectively on 2 May 1991 and 26 October 1992.

Defendant answered, asserting as a defense that the action was barred by the statute of limitations. Defendant moved for summary judgment, which motion was orally denied by Judge James M. Long at the 26 October 1992 Civil Session of Davidson County Superior Court. The action was tried before a jury during the 25 October 1993 Civil

**WOOTEN v. WARREN**

[117 N.C. App. 350 (1994)]

Session of Davidson County Superior Court, the Honorable John Mull Gardner presiding. At the close of the evidence, defendant moved for a directed verdict in her favor, asserting that the action was barred by the statute of limitations. Judge Gardner refused to rule on the motion on the ground that the defendant had earlier asserted the same defense by a motion for summary judgment which the other superior court judge had denied. Therefore, Judge Gardner said that he lacked the authority to rule on the motion. The jury found defendant negligent and awarded damages of $65,000. Defendant appeals. The facts pertaining to the issues are set forth below.

*James E. Snyder, Jr. for plaintiff-appellee.*

*Brinkley, Walser, McGirt, Miller, Smith & Coles, by Charles H. McGirt, for defendant-appellant.*

THOMPSON, Judge.

Defendant assigns error to (1) the denial of her motion for directed verdict, (2) the admission of expert testimony, and (3) the jury charge.

I. MOTION FOR DIRECTED VERDICT

[1] We first discuss defendant's assignment of error relating to the trial court's refusal to consider her motion for a directed verdict. Defendant argues that the trial court should have considered the motion and that if it had done so, it would have granted the motion. We agree that the trial court should have considered the motion. " '[T]he earlier denial of a motion for summary judgment should not, in any way, be considered a barrier to later consideration of a motion for directed verdict.' " *Edwards v. Northwestern Bank*, 53 N.C. App. 492, 495, 281 S.E.2d 86, 88, *disc. review denied*, 304 N.C. 389, 285 S.E.2d 831 (1981) (citation omitted). *See also Clinton v. Wake County Board of Education*, 108 N.C. App. 616, 621, 424 S.E.2d 691, 694, *disc. review denied*, 333 N.C. 574, 429 S.E.2d 570 (1993) (pretrial order denying summary judgment has no effect on one's right to a later order granting or denying a directed verdict on the same issue). However, we disagree that the trial court should have granted the motion.

When the statute of limitations has been properly pleaded as a defense, the burden of proof is on the party against whom the statute is pleaded to show that his claim is not barred. *Silver v. Board of Transportation*, 47 N.C. App. 261, 266, 267 S.E.2d 49, 54 (1980). A directed verdict is proper where plaintiff fails to introduce evidence

to carry the burden of proving that the action was instituted within the prescribed period. *See Poore v. Railway*, 30 N.C. App. 104, 106, 226 S.E.2d 170, 171, *disc. review denied*, 290 N.C. 777, 229 S.E.2d 33 (1976). Defendant contends that plaintiff failed to meet her burden of proving that the action was instituted within the period required by the statute of limitations applicable to plaintiff's claim for personal injuries. We disagree.

Under the terms of N.C. Gen. Stat. § 1-52(16) (1994), plaintiff's cause of action would be time barred if she failed to institute the action within three years of 2 April 1985, the date of the accident. N.C. Gen. Stat. § 1A-1, Rule 3 (1990) provides that "[a] civil action may . . . be commenced by the issuance of a summons when (1) a person makes application to the court stating the nature and purpose of his action and requesting permission to file his complaint within 20 days and (2) the court makes an order stating the nature and purpose of the action and granting the requested permission." The record shows that, pursuant to Rule 3, plaintiff commenced this action on 31 March 1988, before the statute of limitations expired, by filing an application and order extending time to file a complaint. The application and order stated that the nature and purpose of the action was a "civil suit for damages for personal injuries sustained in an autombile accident" and that the time for filing the complaint should be extended to 20 April 1988. Plaintiff filed the complaint and served defendant with a copy thereof on 19 April 1988.

Defendant also argues that the amended complaint of 26 October 1992, which alleged that the accident occurred on 2 April 1985 instead of 2 April 1987, does not relate back to the original complaint since the original complaint does not "give notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading" as required by Rule 15(c) of the North Carolina Rules of Civil Procedure. N.C. Gen. Stat. § 1A-1, Rule 15(a) (1990). In such event, plaintiff's cause of action would be deemed commenced as of 26 October 1992, well beyond the statute of limitations. We disagree. Both the original and amended complaints allege that plaintiff was injured in a collision on Highway 52 between a vehicle driven by defendant and another vehicle in which plaintiff was a passenger. Aside from the changes made by the first amended complaint, the only difference between the original and the second amended complaint of 26 October 1992 is the year in which the accident occurred and that is sufficient to give the notice called for by Rule 15(c).

## II. Admission of Expert Testimony

**[2]** Defendant assigns error to the admission of the expert testimony of Stephen J. Brodar, a doctor of chiropractic. Dr. Brodar was allowed to testify as an expert in the science of chiropractic. Dr. Brodar treated plaintiff from 6 June 1991 to 12 October 1993 for myofacial pain syndrome. Dr. Brodar testified in detail as to the findings of his initial examination, in which he took a patient history and performed chiropractic, orthopedic and neurological examinations as well as the standard physical assessment. Defendant argues that portions of Dr. Brodar's testimony were unresponsive and beyond the expertise of chiropractic as set forth in N.C. Gen. Stat. § 90-157.2 (1993). The bulk of defendant's objections to Dr. Brodar's testimony were general objections. Defendant did object to portions of Dr. Brodar's testimony as unresponsive to the questions asked.

We have reviewed the portions of Dr. Brodar's testimony which defendant contends were unresponsive and to the extent that Dr. Brodar's testimony was unresponsive, we find it harmless. N.C. Gen. Stat. § 1A-1, Rule 61 (1990).

Defendant did not, however, specify as ground for objection that Dr. Brodar's testimony was beyond the expertise of chiropractic. Thus, defendant failed to properly preserve that question for appellate review. N.C.R. App. P. 10(b)(1) (1994). Despite defendant's failure to properly preserve the question, we also reviewed Dr. Brodar's testimony in light of N.C. Gen. Stat. § 90-157.2 and find that it fell within the scope of his expertise as a chiropractor.

N.C. Gen. Stat. § 90-157.2 provides:

A Doctor of Chiropractic, for all legal purposes, shall be considered an expert in his field and, when properly qualified, may testify in a court of law as to:

(1) The etiology, diagnosis, prognosis, and disability including anatomical, neurological, physiological, and pathological considerations within the scope of chiropractic, as defined in G.S. 90-151; and

(2) The physiological dynamics of contiguous spinal structures which can cause neurological disturbances, the chiropractic procedure preparatory to, and complementary to the correction thereof, by an adjustment of the articulations of the vertebral column and other articulations.

Subsection (2) of the statute was added by amendment in 1989. In *Thomas v. Barnhill*, 102 N.C. App. 551, 403 S.E.2d 102 (1991), this Court considered whether the testimony of a chiropractor in that case fell within the scope of a doctor of chiropractic, as set forth in the amended statute. In holding that the testimony was within the scope, this Court stated that "the legislative history suggests that the General Assembly intended 'to allow chiropractors to testify as to the spinal column and the physical structures that support and/or complement it.' " *Barnhill*, 102 N.C. App. at 554, 403 S.E.2d at 103.

The greater part of Dr. Brodar's testimony concerned his treatment and diagnosis of plaintiff's myofascial pain syndrome which resulted from the improper healing of the structures of her neck and back. The substance of Dr. Brodar's testimony to which defendant assigns error follows: that in taking plaintiff's history, plaintiff stated that she injured her head and neck in a car collision in which she was thrown forward from the right front passenger seat and that she had experienced a worsening of her symptoms since the accident. Plaintiff had the following complaints and symptoms:

> severe neck pain, and severe headaches from the back to the front at the top of her head, dizziness, ringing in her ears, pain down both arms with a tingling-type sensation, low back pain, tightness and like a knot in her throat; nausea, her head felt heavy. She was having sleeplessness, nervousness, blurred vision, weakness in her legs, depression, a lack of concentration and forgetfulness and decrease of the right rotation, turning the head to the right; fatigue and lethargy, which is a very tired type feeling.

Dr. Brodar's examination of plaintiff's x-rays revealed a loss of the normal curve in the neck and a break in the George's line, a line that is drawn down the back of the vertebra. Dr. Brodar testified to the effect that the normal curve of the neck enables the body to adapt to injuries or painful situations by taking the pressure off the spinal cord and nerves that come down from the brain and through the spinal column. When the curve is straightened, it increases the diameter of the hole that runs down through the spinal column to help take the pressure off the spinal cord and nerves. A misaligned George's line indicates damage to the ligaments and supporting structures of the spine, which results in instability in the bones of the spine. Instability in the bones of the spine can cause neurological and muscular complaints which "can run anywhere from affecting the vertebral artery, which is the blood supply to the brain, to the nerves that come

out to the muscles that surround it. So you can get dizzines, migraine headaches, vascular-type syndromes to the hand."

Dr. Brodar determined plaintiff's grip strength by dyanometer testing. The dyanometer revealed a weakness of the upper extremity which can be caused by myofascial pain syndrome, an inflammation of the muscles where the nerve inserts into the muscle, or by a decreased nerve response down in the hand and the arm muscle. Myofascial pain syndrome is an ultrasensation in an active myofascial point, which is the point at which the nerve enters the muscle, and is usually based on five major criteria, all of which plaintiff had. Dr. Brodar opined that plaintiff suffered from myofascial pain syndrome and that the syndrome was a result of improper healing of the structures of her neck and back which were injured in the 1985 automobile accident. Dr. Brodar explained that because these structures did not heal properly from the beginning, the muscles became overworked and scarred. The scarring produced the myofascial pain that caused the chronic pain syndrome and chronic complaints over many years.

Dr. Brodar's diagnosis of plaintiff's condition after all of his treatment was "a severed cervicobrachial syndrome and multiple cervical sublaxations, lumbar segmental disfunction, chronic hypertension [sic], hyperflexion and cervical strain syndrome." In addition, Dr. Brodar testified that

she had abnormal involuntary muscle spasms, headaches, tingling, or paresthesia. Pain in her neck; pain in her back. She was extremely nervous. She had difficulty sleeping, dizziness, ringing in her ears, blurred vision, fatigue and myofascial pain syndrome, which eventually results in the chronic pain syndrome.

Dr. Brodar opined further that plaintiff's initial injury in the 2 April 1985 accident caused the "subsequent non-healing of her injuries properly, leading to the complaints and presentations that she showed us at her visit on 6-91." We hold that the foregoing testimony was within the expertise of a chiropractor as authorized by N.C. Gen. Stat. § 90-157.2.

Defendant also argues that the court's denial of her motion to strike the testimony of Dr. Rauch, an expert in the field of anesthesia and the subspecialty of pain medicine, constituted prejudicial error. Dr. Rauch saw plaintiff in the Pain Clinic at North Carolina Baptist Hospital on referral from Dr. Brodar. Dr. Rauch testified that he diagnosed plaintiff as suffering from myofascial pain syndrome in the cer-

vical area and in the low back and stated that he had an opinion to a reasonable degree of medical certainty whether the automobile accident could have resulted in the myofascial pain syndrome. Since Dr. Rauch never stated his opinion, at the close of the evidence defendant moved to strike Dr. Rauch's testimony as irrelevant. Dr. Rauch's testimony followed Dr. Brodar's testimony to the effect that in his opinion plaintiff's myofascial pain syndrome resulted from the improper healing of the injuries she suffered in the automobile accident. For this reason, we find no error in the admission of Dr. Rauch's testimony.

### III. Jury Instructions

[3] Finally, we consider defendant's assignments of error to the jury charge. The trial court made the following instruction to the jury to which defendant assigns error:

> Now, I instruct you in this case the defendant contends and the plaintiff denies that any aggravation or activation of the plaintiff's emotional or physical condition was not reasonably foreseeable and that, therefore, the defendant's conduct could not be a proximate result of the plaintiff's injury. I instruct you that when a defendant's negligent conduct would not have resulted in any injury to a plaintiff of ordinary susceptibility[,] [t]he defendant would not be liable for the harmful consequences which result from the plaintiff's peculiar susceptibilities such as an activation or aggravation of a pre-existing physical condition or mental or emotional state unless under the circumstances the defendant knew or should have known of such peculiar condition.

> Now, if the negligent conduct of the defendant would have resulted in any injury to a person of ordinary susceptibility, then the negligent conduct of the defendant would be a proximate cause of the plaintiff's injury and the defendant would be liable for all the harmful consequences which occur even though these harmful consequences may be unusually extensive because of the aggravation or activation of a pre-existing physical condition or mental or emotional state.

> . . .

> If you find by the greater weight of the evidence that the injury is permanent, and that such permanent injury was proximately caused by the defendant's negligence, then what is fair compensation to the plaintiff will depend in part on the plaintiff's life

expectancy. That is on how much longer she may reasonably expect to live. This is to be considered by you in determining what is fair compensation for those elements of damages which you find by the greater weight of the evidence will continue throughout the plaintiff's life. . . .

Defendant contends that there was no evidence to support the trial court's instructions on the aggravation or activation of a pre-existing condition, permanent injury, or formulation of damages based on plaintiff's life expectancy and thus these instructions constituted prejudicial error.

When instructing the jury in a civil case, the trial court has the duty to explain the law and apply it to the evidence on the substantial issues of the action. N.C. Gen. Stat. § 1A-1, Rule 51 (1990). *Pallet Co. v. Wood,* 51 N.C. App. 702, 703, 277 S.E.2d 462, *disc. review denied,* 303 N.C. 545, 281 S.E.2d 393 (1981). Pursuant to this duty, the trial court must instruct on a claim or defense if the evidence, when viewed in the light most favorable to the proponent, supports a reasonable inference of such claim or defense. *Id.* at 703, 277 S.E.2d at 463-64. Conversely, it is error for the trial court to instruct on a claim or defense where the evidence, when viewed in the light most favorable to the proponent, does not support a reasonable inference of such claim or defense. We find this case similar to *Smith v. Buckhram,* 91 N.C. App. 355, 372 S.E.2d 90, (1988), *disc. review denied,* 324 N.C. 113, 377 S.E.2d 236 (1989). In *Buckhram,* this Court held instructions on permanent injury were proper where evidence of permanency was properly introduced at trial and comprised a substantial feature of the case. The Court reasoned that under those circumstances Rule 51 requires an instruction on the issue. *Id.* at 359, 372 S.E.2d at 93. The Court further held, however, that instructions on aggravation of a pre-existing condition were improper because the evidence, when viewed in the light most favorable to the plaintiff, did not support any inference of the aggravation of a pre-existing injury. The Court awarded defendant a new trial. *Id.* at 360-62, 372 S.E.2d at 93-94.

In the case *sub judice,* plaintiff properly introduced evidence of permanency. Dr. Edmundson, who testified as an expert in the field of neurosurgery, stated that in his expert medical opinion plaintiff has a five percent permanent partial disability of the cervical spine. Dr. Brodar testified that in his expert opinion plaintiff had an impairment rating to her neck of four percent as a result of her injury, an impair-

ment rating to her "low" back of five percent, and to her head (for headaches) of three percent, resulting in a 12 percent impairment of her physical being. We find this evidence sufficient to support an instruction on permanent injury.

We find no evidence, however, to support the trial court's instructions on the aggravation or activation of a pre-existing condition. Therefore, the trial court's instructions were improper in that respect. The only evidence which plaintiff points to as supporting the instruction on pre-existing condition consists of the testimonies of Dr. Brodar and Dr. Rauch to the effect that plaintiff manifested symptoms of depression and that it is common for persons with chronic pain to become depressed. That testimony did not relate to a pre-existing condition, but rather to a condition caused by the injuries suffered in the accident in suit. For this reason, we are constrained to vacate the judgment awarding plaintiff damages of $65,000 and remand for a new trial on the issue of damages only.

[4] Defendant also contends that the instruction on life expectancy should not have been given because plaintiff failed to introduce any evidence of her life expectancy. In particular, defendant notes that plaintiff did not introduce either her age or the mortuary tables into evidence. Plaintiff contends that the jury could determine her life expectancy from their observation of her demeanor and physical appearance. We need not decide this issue since we are remanding the case for a new trial on damages.

Nevertheless, we note that life expectancy is determined from evidence of the plaintiff's health, constitution, habits, and the like, as well as from mortuary tables. *See Harris v. Atlantic Greyhound Corp.*, 243 N.C. 346, 355, 90 S.E.2d 710, 716 (1956). N.C. Gen. Stat. § 8-46 (1986) allows the mortuary tables to be "received in all courts and by all persons having power to determine litigation, as evidence, with other evidence as to the health, constitution and habits of such person" of life expectancy without the introduction of the mortuary tables into evidence. Although the mortuary tables are not conclusive evidence of life expectancy, we are aware of only one case in North Carolina which has found evidence of health, constitution and habits of a person sufficient evidence from which a jury can determine life expectancy. *See Rea v. Simowitz*, 226 N.C. 379, 382, 38 S.E.2d 194, 196 (1946) (in suit for wrongful death of a nine-year-old girl, where the mortuary tables under G.S. 8-46 did not afford evidence of the life expectancy of a child under 10 years of age, jury could determine

DUNES SOUTH HOMEOWNERS ASSN. v. FIRST FLIGHT BUILDERS

[117 N.C. App. 360 (1994)]

girl's life expectancy from evidence of her health, constitution and habits). Other jurisdictions have likewise found that the mortuary tables are not indispensible to a determination of life expectancy. *See Gaber Co. v. Rawson*, 549 S.W.2d 19 (1977); *Gardner v. Hobbs*, 69 Idaho 288, 206 P.2d 539 (1949); *Shwer v. New York, C. & St. L.R. Co.*, 161 Ohio St. 15, 117 N.E.2d 696 (1954). Nevertheless, we think the better practice is to introduce the mortuary tables in addition to evidence of health, constitution and habits.

The judgment for plaintiff in the amount of $65,000 in damages is

Vacated and remanded for a new trial on damages.

Judges JOHNSON and MARTIN concur.