DILLON, Judge.
 

 *473
 
 Emily Cheek ("Defendant") appeals from a jury verdict awarding Joris Haarhuis ("Plaintiff") compensatory and punitive damages for the wrongful death of Plaintiff's wife, and from an order by the trial court denying Defendant's motion for a new trial. For the following reasons, we affirm.
 

 I. Background
 

 Plaintiff filed this action against Defendant to recover both compensatory and punitive damages for the wrongful death of his wife, Julie Haarhuis. Before trial, the parties stipulated to a set of facts establishing that Defendant negligently caused the death of Ms. Haarhuis, in relevant part, as follows: Defendant was driving on a two-lane road at approximately 6:30 a.m. She lost control of her vehicle, crossing the opposing lane of traffic and striking Ms. Haarhuis, who was walking on the opposite shoulder of the road. As a result of the accident, Ms. Haarhuis suffered severe injuries. Several days later, Ms. Haarhuis died as a result of those injuries.
 

 The trial was bifurcated, with the first phase of the trial addressing compensatory damages and the second phase addressing punitive damages. During the compensatory damage phase, Plaintiff put on
 
 *474
 
 evidence concerning his actual damages, including evidence of the suffering his wife endured before her death. The jury awarded Plaintiff $4.25 million in compensatory damages. The trial then moved to the punitive damage phase.
 

 During the punitive damage phase of the trial, the jury heard evidence that Defendant was still in school and worked part time, that she had consumed alcohol in the early morning hours prior to the accident, and that she had a blood alcohol content above the legal limit approximately two hours after the accident occurred. The jury awarded Plaintiff $45,000 in punitive damages.
 

 *724
 
 Defendant filed a motion for new trial which the trial court denied. Defendant appealed.
 

 II. Analysis
 

 On appeal, Defendant makes a number of arguments concerning the conduct of the trial and the trial court's denial of her motion for a new trial. We address each argument in turn.
 

 When reviewing a trial court's ruling on a motion for a new trial, we consider whether there are grounds for a new trial pursuant to Rule 59.
 
 See
 
 N.C. Gen. Stat. § 1A-1, Rule 59 (2015). Our review is "limited to the determination of whether the record affirmatively demonstrates a manifest abuse of discretion by the judge."
 
 Worthington v. Bynum
 
 ,
 
 305 N.C. 478
 
 , 482,
 
 290 S.E.2d 599
 
 , 602 (1982). "Abuse of discretion results where the [trial] court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision."
 
 State v. Hennis
 
 ,
 
 323 N.C. 279
 
 , 285,
 
 372 S.E.2d 523
 
 , 527 (1988).
 

 A. Right to a Bifurcated Trial
 

 At trial, Defendant exercised her right to request a bifurcated trial pursuant to N.C. Gen. Stat. § 1D-30.
 
 See
 
 N.C. Gen. Stat. § 1D-30 (2015). On appeal, Defendant argues that Plaintiff's questioning of the jury during
 
 voir dire
 
 was improper and violated her "due process right" to a bifurcated trial because it involved issues that would only be relevant to Plaintiff's punitive damage claim.
 

 Our General Assembly has provided that a plaintiff may not recover punitive damages where the defendant is not found to be liable for compensatory damages. N.C. Gen. Stat. § 1D-15. Therefore, to ensure that a jury does not award compensatory damages based on issues relevant only to punitive damages, our General Assembly has granted a defendant the right to a bifurcated trial, which allows "issues of liability for
 
 *475
 
 compensatory damages and the amount of compensatory damages, if any, [to] be tried separately from the issues of liability for punitive damages and the amount of punitive damages, if any." N.C. Gen. Stat. § 1D-30. In a bifurcated trial, the plaintiff is not allowed to introduce any evidence "relating solely to punitive damages" during the compensatory damage phase.
 

 Id.
 

 In addition, the statute requires the same trier of fact that tried the issues relating to compensatory
 
 *725
 
 damages to try the issues relating to punitive damages.
 

 Id.
 

 In the present case, Defendant does not argue that Plaintiff introduced improper evidence concerning Defendant's intoxication during the compensatory phase of the trial. Rather, she argues that Plaintiff's questioning of potential jurors during
 
 voir dire
 
 regarding their general attitudes about alcohol and drunk driving-questions which were only relevant to the punitive damage phase of the trial-was inappropriate.
 
 [1]
 

 We acknowledge that N.C. Gen. Stat. § 1D-30 presents a dilemma of sorts, as suggested by Defendant's argument. Specifically, N.C. Gen. Stat. § 1D-30 gives a defendant the right to a bifurcated trial in order to ensure that the jury, when considering the issue of compensatory damages, is not improperly influenced by evidence relevant only to punitive damages. However, a defendant's right to bifurcation must be weighed against a plaintiff's right to an impartial jury, which includes a plaintiff's right to question potential jurors during
 
 voir dire
 
 about issues that they may be asked to consider.
 
 See
 

 State v. Jones
 
 ,
 
 339 N.C. 114
 
 , 136,
 
 451 S.E.2d 826
 
 , 836-37 (1994) ("The purpose of
 
 voir dire
 
 is to ferret out jurors with latent prejudices and to assure the parties' right to an impartial jury.").
 

 N.C. Gen. Stat. § 1D-30
 
 requires
 
 that the same jury try both the issues relating to compensatory damages and the issues relating to punitive damages, presumably for judicial economy reasons.
 
 See
 
 N.C. Gen. Stat. § 1D-30 (providing that "[t]he same trier of fact that tried the issues relating to compensatory damages shall try the issues relating to punitive damages"). As such, in the present case, Plaintiff had the right to question potential jurors regarding their
 
 general
 
 attitudes about alcohol
 
 *476
 
 and drunk driving in order to determine "whether a basis for challenge for cause exist[ed]" and to allow both parties to "intelligently exercise [their] peremptory challenges."
 
 State v. Gregory
 
 ,
 
 340 N.C. 365
 
 , 388,
 
 459 S.E.2d 638
 
 , 651 (1995). Of course, the trial judge must exercise discretion in determining the extent and type of questioning permitted in order to protect the rights of all parties.
 
 See
 

 Jones
 
 ,
 
 339 N.C. at 134
 
 ,
 
 451 S.E.2d at 835
 
 (stating that the "form of counsel's questions" and "the manner and extent of trial counsel's inquiries" are within the sound discretion of the trial court). We conclude that Plaintiff's questioning, which was general in nature and did not expressly state that Defendant had been intoxicated, was appropriate.
 

 B. "Stake Out" Questions
 

 Defendant argues that the trial court erred in permitting Plaintiff's attorney to ask improper "stake out" questions during
 
 voir dire
 
 . Defendant contends that the totality of Plaintiff's
 
 voir dire
 
 questioning biased the jury, resulting in an unfair trial. We disagree.
 

 The purpose of jury
 
 voir dire
 
 is to "eliminate extremes of partiality and ensure that the jury's decision is based solely on the evidence presented at trial."
 
 State v. White
 
 ,
 
 340 N.C. 264
 
 , 280,
 
 457 S.E.2d 841
 
 , 850 (1995). "The extent and manner of a party's inquiry into a potential juror's fitness to serve is within the trial court's discretion."
 

 Id.
 

 On appeal, we review the entire record of
 
 voir dire
 
 to determine "whether the trial court abused its discretion and whether that abuse resulted in harmful prejudice to the defendant."
 
 State v. Cheek
 
 ,
 
 351 N.C. 48
 
 , 66,
 
 520 S.E.2d 545
 
 , 556 (1999).
 

 A "stake out" question asks a juror to "pledge himself [or herself] to a future course of action" by asking what "verdict [the prospective juror] would render, or how they would be inclined to vote, under a given state of facts."
 
 State v. Vinson
 
 ,
 
 287 N.C. 326
 
 , 336,
 
 215 S.E.2d 60
 
 , 68 (1975),
 
 vacated in part on other grounds
 
 ,
 
 428 U.S. 902
 
 ,
 
 96 S.Ct. 3204
 
 ,
 
 49 L.Ed.2d 1206
 
 (1976). Our Supreme Court has held that stake out questions are generally improper:
 

 Counsel may not pose hypothetical questions which are designed to elicit from prospective jurors what their decision might be under a given state of facts. Such questions are improper because they tend to "stake out" a juror and cause him to pledge himself to a decision in advance of the evidence to be presented.
 

 Id.
 

 *477
 
 On appeal, Defendant challenges numerous questions asked by Plaintiff's counsel during
 
 voir dire
 
 . We will address each line of questioning in turn.
 
 [2]
 

 Defendant first takes issue with a hypothetical scenario presented by Plaintiff's counsel where counsel asked if the juror approached a red light late at night with no traffic nearby, would the juror "wait for it to change or [ ] go straight through it?" Although this question did involve a hypothetical set of facts, it was not a stake out question because the facts presented were not similar to the underlying facts of the case and did not ask jurors to state what kind of verdict they would render.
 
 See
 

 State v. Parks
 
 ,
 
 324 N.C. 420
 
 , 423,
 
 378 S.E.2d 785
 
 , 787 (1989). Rather, this question addressed a "key criterion of juror competency"-whether jurors were inclined to follow the law.
 
 See
 

 State v. Chapman
 
 ,
 
 359 N.C. 328
 
 , 346,
 
 611 S.E.2d 794
 
 , 810 (2005).
 

 Defendant next challenges Plaintiff's counsel's questions regarding jurors' attitudes toward awarding damages. Plaintiff's counsel first posed the question as follows:
 

 Which way do you lean? Are you a little closer to the folks who think that, in considering money, you should only consider the harms and losses or are you closer to
 
 *726
 
 folks who think you should factor in other things in determining how much money to include in your verdict?
 

 The trial court overruled Defendant's first objection to this line of questioning, but after a bench conference, Plaintiff's counsel rephrased the question as follows:
 

 What trouble would you have, if you are instructed by the judge ... that you are only to consider the harms and losses that are proven from the evidence[,] in following that instruction and only considering harms and losses and factoring out [ ] everything else?
 

 Defendant's counsel also objected to this phrasing of the question. Even assuming that the first iteration of the harms and losses question was an inappropriate stake out question, we do not believe that it prejudiced Defendant. Only one juror responded to the first question before
 
 *478
 
 counsel rephrased it after the bench conference. The second iteration of the question was clearly an appropriate
 
 voir dire
 
 question intended to determine if jurors could follow the law as presented by the trial court.
 
 See
 

 State v. Wiley
 
 ,
 
 355 N.C. 592
 
 , 617,
 
 565 S.E.2d 22
 
 , 40 (2002) (stating that the right to an impartial jury recognizes "that each side will be allowed to inquire into the ability of prospective jurors to follow the law"). Likewise, Plaintiff's question to the jury regarding whether they would have trouble putting money into a verdict for pain and suffering also sought to determine whether jurors could follow the law allowing damages for pain and suffering.
 
 See
 
 N.C. Gen. Stat. § 28A-18-2 (2015).
 

 Defendant also contends that Plaintiff's counsel improperly asked jurors whether they had lost someone who had provided "care" to them or to family members. This was clearly not a stake out question, and was appropriate in order to allow both parties to evaluate the fitness of each juror to serve on this particular jury.
 
 See
 

 White
 
 , 340 N.C. at 280,
 
 457 S.E.2d at 850
 
 .
 

 Finally, Defendant contends that it was improper for Plaintiff's counsel to ask whether jurors thought DUI laws were too harsh or too lax. Prior to trial, the parties agreed that no questions would be asked which tended to tie Defendant to alcohol, but that Plaintiff could ask about alcohol-related issues so long as it was not too suggestive. This question appears to be an attempt by Plaintiff's counsel to gauge jurors' attitudes toward alcohol in general. This was not a stake out question to because it did not provide any facts of the case and did not ask jurors to state what their verdict would be under a given state of facts.
 
 See
 

 Cheek
 
 ,
 
 351 N.C. at 66-67
 
 ,
 
 520 S.E.2d at 556
 
 . While the issue of alcohol could perhaps have been approached more delicately, we do not believe that this question prejudiced Defendant, when reviewed in the context of the entire jury selection process.
 

 After thorough review of the transcript of jury
 
 voir dire
 
 in this case, including the questions to which Defendant's objections were sustained, we are unable to find that the trial court abused its discretion during
 
 voir dire
 
 or that Defendant was prejudiced by the totality of the questions posed by Plaintiff's counsel.
 
 See
 
 id.
 

 Accordingly, this argument is overruled.
 

 C. Jury Instructions
 

 Defendant's next argument involves the trial court's instruction of the jury. Specifically, Defendant argues that the trial court should not have given an instruction to the jury regarding pain and suffering damages because there was no evidence that the victim experienced
 
 *479
 

 conscious
 
 pain and suffering. We conclude that the trial court did not commit reversible error regarding the challenged instruction.
 

 Our wrongful death statute provides that pain and suffering damages are recoverable in a wrongful death action, N.C. Gen. Stat. § 28A-18-2(a)(2) (2015) ; however, such damages are only available where the evidence supports such an award.
 
 See
 

 DiDonato v. Wortman
 
 ,
 
 320 N.C. 423
 
 , 431,
 
 358 S.E.2d 489
 
 , 493 (1987) (stating that damages in a wrongful death action "must be proved to a reasonable level of certainty, and may not be based on pure conjecture");
 
 Brown v. Moore
 
 ,
 
 286 N.C. 664
 
 , 672,
 
 213 S.E.2d 342
 
 , 348 (1975) (noting that there is no basis for recovery of pain and suffering damages where injury and death occurred simultaneously). And when charging a jury in a civil case, the
 
 *727
 
 trial court "has the duty to explain the law and apply it to the evidence on the substantial issues of the action."
 
 Wooten v. Warren
 
 ,
 
 117 N.C. App. 350
 
 , 358,
 
 451 S.E.2d 342
 
 , 347 (1994) ;
 
 see also
 
 N.C. Gen. Stat. § 1A-1, Rule 51. The trial court must instruct on a claim or defense "if the evidence, when viewed in the light most favorable to the proponent, supports a reasonable inference of such claim or defense."
 
 Wooten
 
 ,
 
 117 N.C. App. at 358
 
 , 451 S.E.2d at 347.
 

 Here, the evidence at trial, viewed in the light most favorable to Plaintiff, did support a reasonable inference that the victim experienced conscious pain and suffering. For instance, three witnesses who were at the scene of the accident testified that the victim was "trying to breathe, and moaning" after being struck by Defendant's vehicle. The victim's treating physician testified that the injuries she sustained would be "severely painful" and that she responded to painful stimuli until her fourth day in the hospital. Based on this testimony, it could be reasonably inferred that the victim consciously experienced pain and suffering before her death, either immediately after the accident or during her hospitalization. Therefore, we conclude that the trial court did not err in instructing the jury on pain and suffering.
 

 D. Witness Testimony
 

 Defendant next argues that the trial court improperly allowed individuals who were not heirs of the victim to testify regarding elements of loss of society and companionship damages. Specifically, Defendant contends that it was improper for the victim's cousin and one of her co-workers to testify regarding the victim's personality and demeanor, and for the co-worker to testify that she had discovered a pregnancy test in the victim's desk at the office. We disagree.
 

 *480
 
 Damages recoverable for wrongful death include the value of "[s]ociety, companionship, comfort, guidance, kindly offices and advice of the decedent." N.C. Gen. Stat. § 28A-18-2(b)(4)(c). Our wrongful death statute further provides:
 

 All evidence which reasonably tends to establish any of the elements of damages in subsection (b) [of the statute], or otherwise reasonably tends to establish the present monetary value of the decedent to the persons entitled to receive the damages recovered, is admissible[.]
 

 N.C. Gen. Stat. § 28A-18-29(c). Our Supreme Court has noted that "personality and other traits relevant to what kind of companion" the decedent had been are relevant in a wrongful death action.
 
 See
 

 DiDonato
 
 ,
 
 320 N.C. at 432
 
 ,
 
 358 S.E.2d at 494
 
 .
 

 Plaintiff argues that this challenged evidence was clearly relevant to the jury's determination regarding the value of the victim's society, companionship, comfort, guidance, kindly offices, and advice pursuant to N.C. Gen. Stat. § 28A-18-2(b)(4)(c), and we can discern no error in its admission. In addition, Defendant has failed to make any argument as to how she was prejudiced by this evidence, in light of the fact that other witnesses testified similarly, and Defendant has not challenged this other evidence.
 

 E. Deterrence Argument
 

 Defendant argues that pursuant to Chapter 1D, it is improper to make a "deterrence" argument during the compensatory phase of a bifurcated trial. We disagree. In short, the purpose of punitive damages is to "punish," N.C. Gen. Stat. § 1D-1 ; therefore, a "punishment" argument might have been inappropriate during the compensatory phase. However, another purpose of compensatory damages is to "deter" negligent behavior; therefore, Plaintiff's deterrence argument was not inappropriate.
 

 Compensation of persons injured by wrongdoing is "one of the generally accepted aims of tort law." Dan B. Dobbs, Paul T. Hayden & Ellen M. Bublick,
 
 The Law of Torts
 
 § 13, at 389 (2d ed. 2011). However, "[c]ourts and writers almost always recognize that another [general] aim of tort law is to deter certain kinds of conduct by imposing liability when that conduct causes harm."
 

 Id.
 

 § 14. Our Supreme Court has noted that "liability [itself] promotes care and caution."
 
 Rabon v. Rowan Memorial Hospital, Inc.
 
 ,
 
 269 N.C. 1
 
 , 13,
 
 152 S.E.2d 485
 
 , 493 (1967). The possibility
 
 *481
 
 of being found liable in tort and ordered to pay compensatory damages certainly acts to deter individuals from committing
 
 *728
 
 tortious conduct in the first instance.
 
 See
 
 id.
 

 Under Chapter 1D, punitive damages may only be awarded if the plaintiff proves that the defendant is liable for compensatory damages
 
 and
 
 one of three aggravating factors is present. N.C. Gen. Stat. § 1D-15(a). These factors include "[w]illful or wanton conduct." N.C. Gen. Stat. § 1D-15(a)(3). In a bifurcated trial, "evidence relating
 
 solely
 
 to punitive damages" is not admissible until the trier of fact has determined whether compensatory damages are warranted and has set the amount of compensatory damages. N.C. Gen. Stat. § 1D-30. Clearly, counsel would not be permitted to reference any aggravating factor during her closing argument in the compensatory phase of a bifurcated trial; however, that is not the issue we are faced with in this case.
 

 Based on Chapter 1D of our General Statutes, the guidance of our Supreme Court, and the long-established general purposes of tort law, we conclude that a
 
 general
 
 deterrence argument is appropriate during the compensatory phase of a bifurcated trial so long as it does not refer to any of the aggravating factors set forth in N.C. Gen. Stat. § 1D-15(a) or urge the trier of fact to punish the defendant.
 

 Here, Plaintiff's counsel stated in closing that a purpose of the civil justice system was to "make people pay full and fair compensation ... and[ ] not one penny more" in order to "enforce [ ] safety rules[.]" Plaintiff's counsel reiterated this argument as follows:
 

 If you[, the jury,] require less than full and fair compensation, ... not only are you failing to compensate [Plaintiff] ... for the harm that's been suffered but you're not creating a deterrent of
 
 making people pay for the harm they cause, and not one penny more
 
 .
 

 These statements were a proper characterization of a purpose of compensatory damages. Plaintiff's counsel did not urge the jury to punish Defendant or "send her a message." Rather, counsel simply recounted the purposes of tort law and requested that the jury make Defendant pay for the "harm [she] cause[d], and not one penny more."
 

 Accordingly, we hold that the trial court did not abuse its discretion by failing to sustain Defendant's objection.
 
 See
 

 State v. Jones
 
 ,
 
 355 N.C. 117
 
 , 131,
 
 558 S.E.2d 97
 
 , 106 (2002) (noting the standard of review for improper closing arguments that provoke a timely objection).
 

 *482
 
 F. Damage Award
 

 Finally, Defendant contends that the trial court should have granted her motion for a new trial based on the fact that the jury's $4.25 million
 
 compensatory
 
 damages verdict was excessive and against the manifest weight of the evidence. We disagree.
 

 Rule 59 allows for the trial court to grant a new trial in the case of "excessive ... damages appearing to have been given under the influence of passion or prejudice[,]" N.C. Gen. Stat. § 1A-1, Rule 59(a)(6), or "insufficiency of the evidence to justify the verdict or that the verdict is contrary to law[.]" N.C. Gen. Stat. § 1A-1, Rule 59(a)(7). However, "[i]t is only when the jury has arbitrarily disregarded the law and the evidence that the judge must exercise [ ] judicial discretion and set the verdict aside."
 
 Brown v. Moore
 
 ,
 
 286 N.C. 664
 
 , 674,
 
 213 S.E.2d 342
 
 , 349 (1975). And our Supreme Court has "held repeatedly since 1820 in case after case, and no principle is more fully settled in this jurisdiction, that the action of the trial judge in setting aside a verdict ... is not subject to review on appeal in the absence of an abuse of discretion."
 
 Goldston v. Chambers
 
 ,
 
 272 N.C. 53
 
 , 59,
 
 157 S.E.2d 676
 
 , 680 (1967) (citing
 
 Armstrong v. Wright
 
 ,
 
 8 N.C. 93
 
 (1820) ).
 

 Here, we conclude that the trial court did not abuse its discretion in denying Defendant's motion for a new trial.
 

 Defendant argues that the jury's relatively small
 
 punitive
 
 damage award of $45,000 is indicative that the jury did more than simply compensate Plaintiff in awarding $4.25 million in
 
 compensatory
 
 damages. Essentially, Defendant contends that the small punitive damage award is indicative that the jury included a measure of punishment in its compensatory award, not knowing that it would get the opportunity to award punitive damages in a second phase.
 

 Regarding the large compensatory damage award, we note that our Supreme Court has
 
 *729
 
 recognized the difficulty of calculating the "monetary value of [a] decedent," stating that such a task "will usually defy any precise mathematical computation."
 
 Brown
 
 ,
 
 286 N.C. at 673
 
 ,
 
 213 S.E.2d at 348-49
 
 . Therefore, "the assessment of damages must, to a large extent, be left to the good sense and fair judgment of the jury[.]"
 
 Id.
 
 at 674,
 
 213 S.E.2d at 349
 
 . As for the small punitive damage award, we note that there was evidence that Defendant made very little money; therefore, it was not an abuse of discretion for the trial court to determine that the jury acted appropriately by finding that a $45,000 punitive damage award was an adequate punishment for this particular Defendant. In conclusion, we cannot say that the trial court abused its discretion in determining that
 
 *483
 
 the compensatory award was appropriate.
 
 See
 

 Worthington v. Bynum
 
 ,
 
 305 N.C. 478
 
 , 486,
 
 290 S.E.2d 599
 
 , 604 (1982).
 

 III. Conclusion
 

 For the foregoing reasons, we find that Defendant received a fair trial, free from prejudicial error. Accordingly, we affirm the trial court's denial of Defendant's motion for new trial pursuant to Rule 59.
 

 AFFIRMED.
 

 Chief Judge McGEE and Judge ZACHARY concur.
 

 [1]
 

 Defendant's objections to several of these questions were sustained by the trial court during
 
 voir dire
 
 . Consequently, Defendant would only be entitled to relief based on these questions if they, taken along with the totality of
 
 voir dire
 
 , resulted in an unfair trial.
 
 See
 

 State v. Jones
 
 ,
 
 347 N.C. 193
 
 , 203,
 
 491 S.E.2d 641
 
 , 647 (1997) ("In reviewing any
 
 voir dire
 
 questions, [our] Court examines the entire record of the
 
 voir dire
 
 , rather than isolated questions.").
 

 [2]
 

 Defendant challenges several questions which she failed to object to during the trial. Because the trial court never had the opportunity to consider these issues, they are not properly before us on appeal. N.C. R. App. P. 10(b)(1) ;
 
 State v. Nobles
 
 ,
 
 350 N.C. 483
 
 , 498,
 
 515 S.E.2d 885
 
 , 895 (1999) ;
 
 State v. Eason
 
 ,
 
 328 N.C. 409
 
 , 420,
 
 402 S.E.2d 809
 
 , 814 (1991).