Clark v. Burnette, 2020 NCBC 86.

STATE OF NORTH CAROLINA

WAKE COUNTY

ANDREW CLARK,

Plaintiff,

v.

JARED BURNETTE and JBAC PROPERTIES, LLC,

Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
19 CVS 8565

**ORDER AND OPINION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON DEFENDANTS' COUNTERCLAIM**

THIS MATTER is before the Court on Defendants Jared Burnette ("Burnette") and JBAC Properties, LLC's ("JBAC") (collectively, Burnette and JBAC are "Defendants") Motion For Summary Judgment on Defendants' Counterclaim. ("Motion for Summary Judgment," ECF No. 38.)

THE COURT, after considering the Motion for Summary Judgment, the briefs in support of and in opposition to the Motion for Summary Judgment, the arguments of counsel at the hearing, and other appropriate matters of record, CONCLUDES that the Motion for Summary Judgment should be GRANTED for the reasons set forth below.

*Barker Richardson, PLLC, by Daniel T. Barker, Esq. and Vann Attorneys PLLC, by Ian S. Richardson, Esq. for Plaintiff Andrew Clark.*

*Williams Mullen, by Camden R. Webb, Esq., Caitlin M. Poe, Esq., and John W. Holten, Esq. for Defendants Jared Burnette and JBAC Properties, LLC.*

McGuire, Judge.

## I.  INTRODUCTION

1.  This lawsuit involves disputes between Plaintiff Andrew Clark ("Clark") and Burnette, who are each 50% members and the two managers of JBAC.  JBAC has a written Operating Agreement which Clark unsuccessfully sought to renegotiate with Burnette in 2018–2019.  On July 19, 2019, Clark filed this lawsuit making claims against Burnette and JBAC.  Burnette hired attorneys to represent him and JBAC and has, to date, paid the legal expenses for defense of this action out of his own pocket.  In early 2020, Burnette sought to be reimbursed for the expenses he paid on behalf of JBAC and for advancement of his own legal fees under the provisions of the Operating Agreement.  Clark refused to allow JBAC to reimburse or advance legal expenses to Burnette.  Consequently, Defendants filed a counterclaim against Clark for a declaratory judgment regarding Burnette's right to advancement, reimbursement, and indemnity.  Defendants now move for summary judgment in their favor on the counterclaim for declaratory judgment.

## II.  FACTS AND PROCEDURAL BACKGROUND

2.  "The Court does not make findings of fact when ruling upon a motion for summary judgment.  But[,] to provide context for its ruling, the Court may state either those facts that it believes are not in material dispute or those facts on which a material dispute forecloses summary adjudication."  *Ehmann v. Medflow, Inc.*, 2017 NCBC LEXIS 88, at *6 (N.C. Super. Ct. Sept. 26, 2017).  Therefore, the Court limits its recitation to the undisputed facts necessary to decide the Motion for Summary Judgment.

3.     Clark and Burnette are citizens and residents of Wake County, North Carolina.

4.     On December 8, 2011, Clark and Burnette formed JBAC, a North Carolina limited liability company.  (ECF No. 3, ¶¶ 3, 7.)  Clark and Burnette are 50-50 members of JBAC and are JBAC's managers.  (Affidavit of Jared Burnette, ECF No. 40.1, ¶ 2; Affidavit of Andrew Clark, ECF No. 48, ¶ 2.)  JBAC owns and operates rooming houses and other rental properties in Raleigh, North Carolina.  (ECF No. 3, ¶ 21.)

5.     On November 16, 2012, Clark and Burnette executed the Operating Agreement of JBAC, LLC.  (ECF No. 40.1, ¶ 3; "Operating Agreement," ECF No. 40.2.)  The Operating Agreement states that Clark is "[p]rimarily responsible for Collections, Property Maintenance and day to day operations," and that Burnette is "[p]rimarily responsible for Acquiring, Financing, and Strategic Direction of Investments."  (ECF No. 40.2, at Article 5.03(h)).  The other terms of the Operating Agreement relevant to the disposition of the Motion are as follows:

**ARTICLE 5**
**RIGHTS AND DUTIES OF MANAGERS**

5.01     Management.

The business and affairs of the Company shall be managed by its Managers.  Except as otherwise provided by this Operating Agreement or by nonwaivable provisions of the [North Carolina Limited Liability Company] Act[1] or other applicable law, each Manager shall have full and complete authority, power and discretion to manage and control the business, affairs and properties of the Company, to make all decisions regarding those matters and to perform any

---

[1] Hereinafter referred to as the "Act."

and all other acts or activities customary or incident to the management of the Company's business.

5.02   Managers.

(a)   The Company shall have two (2) Managers, who shall be Jared Burnette and Andrew Clark, and shall remain a [sic] Managers of the Company until their death [sic], incapacity or resignation.  In the event of death, capacity or resignation of the Managers, then the surviving Manager shall be the Successor Manager.

(b)   The Managers shall have the responsibility for the day to day operation and management of the Company, and they shall have the authority to sign any legal documents for the Company.  Both Mangers [sic] shall be required to sign and [sic] Deeds transferring real property from the name of the company.  Either manager (and only one (1) manager) is required to sign any HUD settlement statements when the company purchases real property but written consent by the other manager is required prior to signing the HUD statement.

(c)   Any purchase or expense that exceeds $5,000.00 requires written consent form [sic] both managers.

5.03   Certain Powers of Managers.  Without limiting the generality of Section 5.01, and subject to the restrictions under Section 5.04, the Managers shall have power and authority, on behalf of the Company:
. . .

(g)   To employ accountants, legal counsel, managing agents or other experts to perform services for the Company and to compensate them from Company funds;
. . .

5.05   Indemnity of the Managers, Employees and Other Agents.  To the fullest extent required under and permitted by the Act, the Company shall indemnify its Managers and make advances for expenses to Managers with respect to the matters capable of indemnification under the Act.  . . .

> 5.07 <u>Expenses of Managers</u>. Managers shall be reimbursed for out-of-pocket expenses associated with performing Company business upon presentation of documentation.

(ECF No. 40.2, at pp. 4–6.)

### ARTICLE 7
### RIGHTS AND OBLIGATIONS OF MEMBERS

> 7.03 *Indemnifications*. To the fullest extent required under and permitted by the Act, the Company shall indemnify the Members and make advances to them for expenses with respect to the matters for which indemnification is permitted thereunder.

(*Id*. at p. 8.)

6. Burnette alleges, and Clark does not dispute, that Clark desired to renegotiate the terms of the Operating Agreement. (ECF No. 40.1, ¶ 45.) When Clark pressed the issue, disputes arose between Burnette and Clark, and in March 2019 Burnette hired attorney James K. Pendergrass, Jr. ("Pendergrass") to represent him. (*Id*. ¶ 5.) The parties discussed their differences regarding the Operating Agreement but could not resolve them.

7. On June 25, 2019, Clark filed this lawsuit. (*Id*. ¶¶ 6–7; "Complaint," ECF No. 3.) In the Complaint, Clark alleges the following: a claim against Burnette for breach of contract (First Claim); in the alternative, a claim against Burnette for quantum meruit (Third Claim); and in the alternative, claims against both Burnette and JBAC for declaratory judgment (Second Claim) and judicial dissolution pursuant to N.C.G.S. § 57D-6-02 (Fourth Claim).

8. On July 19, 2019, Burnette retained the law firm Williams Mullen ("WM") to represent both him and JBAC in this lawsuit. (*Id.* ¶ 8.) In February 2020, Burnette notified Clark that he had retained counsel for JBAC, and that he would be seeking reimbursement for JBAC's legal expenses in defending the lawsuit. (ECF 40.1, ¶¶ 10–12; ECF No. 48, ¶¶ 9–12.) Defendants allege that in response to their demands for reimbursement and advancement, "Clark declared that he would not approve or consent to Burnette's and JBAC's legal expenses arising from the lawsuit that he initiated against them." (ECF No. 29, ¶ 16.)

9. On February 14, 2020, Defendants filed an Answer and Counterclaim (ECF No. 27), and on March 11, 2020, Defendants filed an Amended Answer and Counterclaim. ("Counterclaim," ECF No. 29.) In their Counterclaim, Defendants seek a declaratory judgment pursuant to N.C.G.S. §§ 1-253 and 1-254 setting forth that:

a. Counter-Defendant Clark has no right under the Operating Agreement or LLC Act to object to defense expenses arising from the lawsuit that he filed against Burnette and JBAC.

b. Counter-Plaintiff Burnette is entitled to advancement of his defense expenses from JBAC under the Operating Agreement and North Carolina LLC Act.

c. Counter-Plaintiff Burnette is entitled to reimbursement and indemnification from JBAC for any payment made and any judgment, settlement, penalty, fine or other cost, including attorneys' fees, incurred in the course of this litigation.

d. Counter-Plaintiff JBAC is entitled to defend itself from the claims which Clark has asserted against it, including making payment of defense expenses.

(ECF No. 29, at pp. 11–12.)

10.     On April 9, 2020, Clark filed a Motion to Dismiss and Reply to Counterclaim.[2] ("Clark's Motion," ECF No. 33.)

11.     On June 10, 2020, Defendants filed the Motion for Summary Judgment and Brief in Support of their Motion ("Brief in Support," ECF No. 39), asking the Court to grant summary judgment in Defendants' favor as to its counterclaim for declaratory judgment.  However, in the Brief in Support, Defendants ask the Court to enter a set of declarations different from the declarations requested in the Counterclaim.  In their Brief in Support, Defendants request that the Court enter the following declarations:

1. The Operating Agreement is valid and enforceable;

2. The Operating Agreement authorized Mr. Burnette to hire counsel to defend the lawsuit brought by Mr. Clark;

3. The Operating Agreement entitles Mr. Burnette for [sic] reimbursement of out-of-pocket expenses associated with defending Mr. Clark's claims against him and JBAC;

4. The Operating Agreement entitles Mr. Burnette to advancement of legal fees arising from the defense of this lawsuit; and

5. The Operating Agreement entitles Mr. Burnette to indemnification to the full extent of the law for any liability arising from this lawsuit.

(ECF No. 39, at p. 8.)

---

[2] Clark did not file a brief in support of his motion to dismiss as required by Business Court Rule 7.2.  Thus, the Court denied Clark's Motion without prejudice for failure to comply with the rule.  ("Order on Plaintiff's Motion to Dismiss Counterclaim," ECF No. 35.)

12.     In support of the Motion for Summary Judgment, Defendants also filed the Affidavit of Jared Burnette, the Operating Agreement, and Plaintiff's Responses to Burnette's First Set of Interrogatories (ECF No. 40.3).  On July 9, 2020, Clark filed his Response Brief in Opposition to the Motion ("Response Brief," ECF No. 46), and the Affidavit of Andrew Clark (ECF No. 48).  On July 20, 2020, Defendants filed their Reply in Support of their Motion.  ("Reply Brief," ECF No. 50.)

13.     The Court held a hearing on the Motion for Summary Judgment on September 22, 2020, at which counsel presented arguments.  The Motion for Summary Judgment is now ripe for disposition.

## III.    STANDARD OF REVIEW

14.     "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that any party is entitled to judgment as a matter of law.'" *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 523, 723 S.E.2d 744, 747 (2012) (quoting N.C.G.S. § 1A-1, N.C. R. Civ. P. 56(c)).  The moving party bears the burden of presenting evidence which shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  *Hensley v. Nat'l Freight Transp., Inc.*, 193 N.C. App. 561, 563, 668 S.E.2d 349, 351 (2008).  An issue is "material" if "resolution of the issue is so essential that the party against whom it is resolved may not prevail."  *McNair v. Boyette*, 282 N.C. 230, 235, 192 S.E.2d 457, 460 (1972).  "A

'genuine issue' is one that can be maintained by substantial evidence." *Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000).

## IV.    ANALYSIS

### A.    *Declaratory Judgment*

15.    Defendants seek summary judgment in their favor on their counterclaim for declaratory judgment.  Under North Carolina law, a declaratory judgment is a statutory remedy that grants the courts authority to "declare rights, status, and other legal relations" when an "actual controversy" exists between parties to a lawsuit.  N.C.G.S. § 1-253; *Town of Pine Knoll Shores v. Carolina Water Serv.*, 128 N.C. App. 321, 321, 494 S.E.2d 618, 618 (1998).  The Court may, by declaratory judgment, "determine[ ] any question of construction or validity" and declare "rights, status or other legal relations" under a written contract.  N.C.G.S. § 1-254.  "As with all other actions, . . . there must be a justiciable controversy before the Declaratory Judgment Act may be invoked.  There is a justiciable controversy if litigation over the matter upon which declaratory relief is sought appears unavoidable."  *Ferrell v. Department of Transp.*, 334 N.C. 650, 656, 435 S.E.2d 309, 313 (1993).  An action for declaratory judgment is ripe for adjudication when "there is an actual or real existing controversy between parties having adverse interests in the matter in dispute." *Andrews v. Alamance Cty.*, 132 N.C. App. 811, 813–14, 513 S.E.2d 349, 350 (1999).

### B.    *Indemnity and Advancement*

16.    Defendants seek declarations establishing that Burnette is entitled to indemnity and advancement rights.  Section 57D-3-31 of the Act provides as follows:

(a) An LLC shall indemnify a person who is wholly successful on the merits or otherwise in the defense of any proceeding to which the person was a party because the person is or was a member, a manager, or other company official if the person also is or was an interest owner at the time to which the claim relates, acting within the person's scope of authority as a manager, member, or other company official against expenses incurred by the person in connection with the proceeding.

(b) An LLC shall reimburse a person who is or was a member for any payment made and indemnify the person for any obligation, including any judgment, settlement, penalty, fine, or other cost, incurred or borne in the authorized conduct of the LLC's business or preservation of the LLC's business or property, whether acting in the capacity of a manager, member, or other company official if, in making the payment or incurring the obligation, the person complied with the duties and standards of conduct (i) under G.S. 57D-3-21, as modified or eliminated by the operating agreement or (ii) otherwise imposed by this Chapter or other applicable law.

17. The Statute, by its plain text, not only permits, but in fact requires, an LLC to indemnify members and managers for certain costs incurred in connection with a proceeding[3] and permits and requires an LLC to reimburse and indemnify members and managers for payments, obligations, and costs made on behalf of the LLC in conducting its business or preserving its business or property. Additionally, nothing in the Act restricts the rights of an LLC to agree that the company shall advance to managers or members costs and fees incurred in defending themselves against claims that arise from their authorized conduct as members or managers. In other words, the Act permits an LLC to advance legal expenses to members and

---

[3] "Proceeding" is defined as "[a]ny civil or criminal proceeding or other action pending before any court of law or other governmental body or agency or any arbitration proceeding." N.C.G.S. § 57D-1-03(28).

managers. *Vanguard Pai Lung, LLC v. Moody*, 2020 NCBC LEXIS 92, *6–7 (N.C. Super. Ct. Aug. 4, 2020); *see also* Russell M. Robinson, II, *Robinson on North Carolina Corporation Law* § 34.04[4] (7th ed. 2019) ("Advances of expenses may . . . be addressed in an operating agreement.").

18.    There is a dearth of North Carolina appellate authority on the rights to indemnity and advancement. Fortunately, this Court has recently provided helpful guidance on these issues. *See Wheeler v. Wheeler*, 2018 NCBC LEXIS 156, *27 (N.C. Super. Ct. Nov. 15, 2018, Robinson, J.) (addressing indemnity and advancement under the North Carolina Business Corporation Act); *Vanguard Pai Lung, LLC,* 2020 NCBC LEXIS 92 (N.C. Super. Ct. Aug. 4, 2020, Conrad, J.) (addressing the Act). This Court will not endeavor to recite the entirety of the excellent explanations and analyses of indemnification and advancement in these two decisions, but will borrow from each case.

19.    In *Wheeler*, the Court explained the difference between indemnification and advancement as follows:

> [i]ndemnification is the right to be reimbursed for all out of pocket expenses and losses caused by an underlying claim. The right is typically subject to a requirement that the indemnitee have acted in good faith and in a manner that he reasonably believed was in the best interests of the company. As a result, an indemnification dispute generally cannot be resolved until after the merits of the underlying controversy are decided because the good faith standard requires a factual inquiry into the events that gave rise to the lawsuit.
> . . .
>
> [a]dvancement, by contrast, is a right whereby a potential indemnitee has the ability to force the company to pay his

litigation expense as they are incurred regardless of whether he will ultimately be entitled to indemnification. Advancement is typically not conditioned on a finding that the party seeking advancement has met any standard of conduct. A grant of advancement rights is essentially a decision to advance credit to the company's officers and directors because the officer or director must repay all sums advanced to him if it is later determined that he is not entitled to be indemnified.

2018 NCBC LEXIS 156, at *26–27 (citations omitted); *see also Vanguard Pai Lung, LLC*, 2020 NCBC LEXIS 92, at *5–6.

20. In addition, "[a]lthough the right[s] to indemnification and advancement are correlative, they are separate and distinct legal actions." *Wheeler*, 2018 NCBC LEXIS 156, at *26 (quoting *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 212 (Del. 2005)). "Advancement is not dependent on the right to indemnification; it serves the distinct purpose of providing immediate, interim relief." *Vanguard Pai Lung, LLC*, 2020 NCBC LEXIS 92, at *11 (quotation omitted). "Advancement provides the immediate relief that indemnification does not. An agreement to advance expenses obligates the company to pay them during the litigation—in other words, before the right to indemnification is established. This arrangement provides corporate officials with immediate interim relief from the personal out-of-pocket financial burden of paying the significant on-going expenses inevitably involved with investigations and legal proceedings." *Id.* at *6 (citations and quotation omitted).

21. With these principles in mind, the Court will review the undisputed facts in this matter and Clark's arguments in opposition to the Motion for Summary Judgment.

C.  *Undisputed Facts*

22.  The facts necessary to decide the limited issues involved in the Motion for Summary Judgment are undisputed.  Article 5.05 of the Operating Agreement provides that "[t]o the fullest extent required under and permitted by the Act, the Company shall indemnify its Managers and make advances for expenses to Managers with respect to the matters capable of indemnification under the Act." (ECF No. 40.2, at p. 6.)  Clark does not argue that the language of Article 5.05 is ambiguous.  To the contrary, Clark admits that the Operating Agreement provides for advancement of legal expenses to JBAC's managers "in some circumstances." (ECF No. 46, at p. 9.)

23.  Likewise, Article 5.07 of the Operating Agreement provides that "[m]anagers shall be reimbursed for out-of-pocket expenses associated with performing Company business upon presentation of documentation." (ECF No. 40.2, at p. 6.)  Clark does not argue that the language of this provision is ambiguous, but, instead, concedes Burnette had authority to hire an attorney to represent JBAC in this lawsuit, and that he should be reimbursed for the legal expenses incurred in defending JBAC against the claims in this action.  (ECF No. 46, at pp. 5, 9.)

i.  *Clark's Arguments*

24.  Despite his significant admissions, Clark opposes the Motion for Summary Judgment.  Clark appears to contend that: (a) to the extent JBAC cannot immediately reimburse Burnette for JBAC's legal expenses or reimburse him for advancements for his own expenses, Burnette will want to establish a "liability" on JBAC books for such payments accruing interest at 12%, and that somehow this will

be unfair to Clark and JBAC (ECF No. 46, at pp. 2, 5–6); (b) Burnette may not be entitled to reimbursement for work performed by Kristen Creech, an employee hired by Burnette to assist him with his defense in this lawsuit (*Id.* at pp. 3–4); (c) there is "overlap work performed by [Pendergrass] and WM" for which Burnette should not be entitled to advancement (*Id.* at p. 4); (d) Burnette improperly paid invoices from the attorneys he retained for more than $5,000 in violation of Article 5.02, which requires Clark's written consent for "any purchase or expense that exceeds $5,000.00" (*Id.* at pp. 7–9); (e) the invoices Burnette has presented to Clark are "addressed to Jared Burnette and not JBAC" (*Id.* at p. 9); (f) "Burnette has never asked for reimbursement for [the legal] expenses" (*Id.* at p. 10); and (g) Burnette is not entitled to reimbursement for his legal expenses because he has not yet established that he is "wholly successful" in defense of the claims raised by Clark in the lawsuit, citing § 57D-3-31(a) (*Id.* at pp. 10–11).

25. Plaintiff seems to misapprehend the very limited issues before the Court. The Motion for Summary Judgment does not seek to have the Court determine the particular legal expenses for which Burnette should be reimbursed or in what amounts. Nor does it require the Court to determine by what financial mechanism— paying advances and reimbursements to Burnette on an ongoing basis or establishing a liability account on JBAC's books for such payments. Defendants only seek summary judgment in their favor as to their Counterclaim for a declaration regarding Burnette's *rights* to advancement, reimbursement, and indemnification. Only two of

Plaintiff's arguments challenge Burnette's right to advancement, reimbursement, and indemnification, and the Court addresses those arguments in turn.

26. First, Plaintiff contends that Burnette never asked for reimbursement of his legal expenses. The Court finds this argument unpersuasive. The Operating Agreement does not require Burnette to make a demand for advancement of his legal expenses or reimbursement of the fees incurred for JBAC.[4] Even if it did, the Court concludes that Burnette has satisfactorily made such a demand through his communications with Clark in early 2020 seeking payment of his expenses and in his counterclaims in this lawsuit.

27. Second, Clark argues that Burnette is not entitled to indemnification until he establishes that he is successful in defending the claims raised by Clark in this lawsuit. With regard to advancement, Clark is simply incorrect as a matter of law. As discussed above, advancement is not dependent on establishing a right to indemnification, and advancement of legal expenses must be made during the course of the litigation for which they are sought. *Vanguard Pai Lung, LLC*, 2020 NCBC LEXIS 92, at *6, 11.

28. With regard to reimbursement for legal expenses Burnette has paid on behalf of JBAC, neither the statute nor the Operating Agreement condition reimbursement on a showing of success on the merits. To the contrary, unlike N.C.G.S. Section 57D-3-31(a), Section 57D-3-31(b) does not require a showing of success before reimbursement is required. Furthermore, Clark concedes that

---

[4] The Operating Agreement does require that a manager present documentation for reimbursement of out-of-pocket expenses paid on behalf of the company.

Burnette is entitled to reimbursement for the expenses he has incurred defending JBAC, and that he is willing to pay them now (conditioned on establishing the fees attributable to work performed for JBAC, as opposed to Burnette).

29. Clark's remaining arguments are properly directed to the specific expenses that JBAC is responsible for paying and the amounts to be paid. The Court has not been asked to determine these questions and need not take up those arguments at this time.

ii. *The Requested Declarations*

30. The Court must next determine whether Defendants are entitled to summary judgment as to the requested declarations. As noted above, the declarations Defendants seek in the Brief in Support are different from the declarations set out in their Counterclaim. Since Defendants set out the specific declarations on which they seek summary judgment in the Brief in Support of their Motion for Summary Judgment and do not expressly seek judgment as to the declarations as stated in the Counterclaim, the Court will consider only the declarations sought in the Brief in Support.

a. The Operating Agreement is valid and enforceable.

31. Defendants seek a declaration that "[t]he Operating Agreement is valid and enforceable." (ECF No. 39, at p. 8.) Defendants contend as follows:

> [Clark] did not specifically allege that the Operating Agreement is unenforceable as a defense to the Counterclaim, but undersigned counsel anticipates this defense will be raised in response to this motion. [Clark]'s argument that the Operating Agreement is unenforceable apparently arises from his allegation that it is

> "substantively and procedurally unconscionable" (Compl. ¶ 48(c)) and his request for a Declaratory Judgment to that effect.

(*Id.* at p. 6.)

32.     However, Defendants misconstrue Clark's allegation.  In paragraph 48(c) of the Complaint, Clark seeks a declaration "[t]hat *paragraph 16.03(b)(3) of the operating agreement . . .* is voided because it is both 'substantively and procedurally unconscionable.'"  (ECF No. 3, ¶ 48(c))  Clark does not allege in the Complaint, nor seek a declaration, that the entire Operating Agreement is unenforceable.

33.     In his Response in Opposition, Clark does not argue that the Operating Agreement is void or unenforceable.  To the contrary, his many admissions seem to acknowledge that the overall Operating Agreement is an enforceable contract.  Instead, Clark merely maintains that he intends to make arguments that certain provisions of the Operating Agreement contain "ambiguities."  (ECF No. 46, at pp. 11–12.)

34.     Clark has not raised a genuine dispute of fact over the validity or enforceability of the overall Operating Agreement.  Therefore, the Court concludes that to the extent it seeks a declaration that the overall Operating Agreement is valid and enforceable, the Motion for Summary Judgment should be GRANTED.  However, this does not preclude Plaintiff from arguing that paragraph 16.03(b)(3) of the Operating Agreement is void and unenforceable.

b. The Operating Agreement authorized Mr. Burnette to hire counsel to defend the lawsuit brought by Mr. Clark.

35. Clark admits that Burnette had authority to hire counsel to defend the lawsuit on behalf of JBAC, and he does not dispute that Burnette had authority to hire counsel to defend himself against the claims raised by Clark. Therefore, the Court concludes that to the extent it seeks a declaration that the Operating Agreement authorized Burnette to hire counsel to defend the lawsuit brought by Clark, the Motion for Summary Judgment should be GRANTED.

c. The Operating Agreement entitles Mr. Burnette for [sic] reimbursement of out-of-pocket expenses associated with defending Mr. Clark's claims against him and JBAC.

36. Again, as discussed above, there is no genuine dispute of fact that the Operating Agreement entitles Burnette to reimbursement for the legal expenses he has paid on behalf of JBAC in this lawsuit. Article 5.07 of the Operating Agreement provides that JBAC's "[m]anagers shall be reimbursed for out-of-pocket expenses associated with performing Company business upon presentation of documentation." It is undisputed that Burnette has incurred "out-of-pocket expenses" in performing JBAC's business; namely, in paying counsel to represent and defend JBAC in this lawsuit. Burnette also has a statutory right to reimbursement for these expenses. N.C.G.S. § 57D-3-31(b).

37. Therefore, the Court concludes that to the extent it seeks a declaration that the Operating Agreement entitles Mr. Burnette to reimbursement of out-of-pocket expenses associated with defending Mr. Clark's claims against JBAC, the Motion for Summary Judgment should be GRANTED.

d. The Operating Agreement entitles Mr. Burnette to advancement of legal fees arising from the defense of this lawsuit.

38. The Court concludes that to the extent Defendants seek a declaration that the Operating Agreement entitles Burnette advancement of his legal expenses arising from the defense of the claims against him in this lawsuit, the Motion for Summary Judgment should be GRANTED.

e. The Operating Agreement entitles Burnette to indemnification to the full extent of the law for any liability arising from this lawsuit.

39. There is no dispute that Burnette, as a manager of JBAC, would be entitled to indemnification under the Operating Agreement to the extent required under and permitted by N.C.G.S. § 57D-3-31 if he is wholly successful on the merits or otherwise in his defense of the claims against him in this lawsuit. Therefore, the Court concludes that to the extent it seeks a declaration that the Operating Agreement entitles Burnette to indemnification to the extent required under and permitted by N.C.G.S. § 57D-3-31(a), the Motion for Summary Judgment should be GRANTED.

40. Finally, the Motion for Summary Judgment does not raise, and the Court makes no determination in this Order and Opinion regarding the proper procedure for, submitting requests for payment of advancements or reimbursement, the type of legal expenses or the particular work performed by counsel for which Burnette should be advanced or reimbursed, or the specific amounts to be paid for advances or reimbursements.

## V.    CONCLUSION

41.    The Court finds that the dispositive facts are not in dispute, and as a matter of law, the Motion for Summary Judgment is GRANTED.

THEREFORE, pursuant to N.C.G.S. § 1-253, the Court issues the following declarations:

1.    The overall Operating Agreement is valid and enforceable.  However, this declaration does not preclude Plaintiff from challenging particular provisions of the Operating Agreement as void or unenforceable.

2.    The Operating Agreement authorizes Burnette to hire counsel to defend JBAC and himself against the claims in this lawsuit.

3.    Under the Operating Agreement, Burnette is entitled to reimbursement for his out-of-pocket expenses incurred and paid in defending against the claims against JBAC in this lawsuit.

4.    Under the Operating Agreement, Burnette is entitled to advancement of his legal expenses arising from defense of the claims against him in this lawsuit.

5.    Under the Operating Agreement, Burnette is entitled to indemnification to the extent required under and permitted by N.C.G.S. § 57D-3-31(a).

THE COURT also orders as follows:

6.    No later than December 23, 2020, counsel shall confer and in good faith attempt to agree on: (a) the amount of advanceable expenses incurred by Burnette to date and on a procedure for payment of future advancement requests, and (b) the amount of reimbursable expenses incurred to date by Burnette on behalf of JBAC and

on a procedure for payment of future reimbursement requests.  On or before December 30, 2020, the parties shall report to the Court, via email to the clerk assigned to this matter, regarding their attempts to reach agreement and any outstanding disputes.

SO ORDERED, this the 2nd day of December, 2020.

/s/ Gregory P. McGuire
Gregory P. McGuire
Special Superior Court Judge
for Complex Business Cases